## GREENBERG v. SAKWINSKI.

1. TRIAL—PLEADING—ABANDONMENT OF COUNTS.

   A statement by plaintiff's counsel, in the course of the trial, that he was ready to plant his action on the second count of his declaration, but nothing further was done, *held*, not to amount to an abandonment of the other two counts.

2. SAME—ELECTION OF COUNTS.

   Where the three special counts fully advised of all plaintiff claimed, were cumulative, and not inconsistent, no election could be required.

3. SAME—BROKERS—COMMISSIONS—TERMINATION OF AGENCY—NOTICE—QUESTION FOR JURY.

   In an action by a real estate broker for commissions, where one count of his declaration charged an exclusive listing, and that his agency could not be terminated without notice, and the testimony as to whether there was notice of its termination was in conflict, the issue was properly left to the jury.

4. BROKERS—COMMISSIONS—LIABILITY OF SELLER ON REFUSAL TO PERFORM.

   A provision in the contract between a broker and his client that payment of the commission was to be "made at the time of settlement of the sale," could not be taken advantage of by the client to evade liability for the commission, where the consummation of the sale was prevented by his refusal to perform.

5. SAME—STATUTE OF FRAUDS—WRITTEN AGREEMENT TO PAY COMMISSION.

   A written agreement to pay a commission for the sale of real estate is valid, although it fail to state the selling price or terms of sale, etc.

6. SAME—COMPLIANCE WITH STATUTE.

   Where the seller accepted in writing a legal and enforceable land contract to sell the property to the purchaser produced by the broker, the statute of frauds was satisfied.

Error to Wayne; Goff (John H.), J. Submitted

On right of broker to commissions where he procures purchaser at price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale, see note in 21 L. R. A. (N. S.) 935.

June 15, 1920.    (Docket No. 49.)    Decided September 30, 1920.

Assumpsit by Nathaniel J. Greenberg against Nicholas Sakwinski for commissions on the sale of real estate.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Charles Bowles,* for appellant.

*McIntyre & Robinson,* for appellee.

STEERE, J.    In July, 1917, defendant and his wife owned a recently completed apartment building called the Cadillac apartments, located at Nos. 1860-1866 East Grand boulevard in the city of Detroit, which they desired to sell.    Plaintiff was engaged in the real estate business with offices in the Penobscot building and some time after July defendant authorized him to secure a purchaser, stating a selling price of $110,000.    Plaintiff worked to effect a sale and presented the matter to various prospective purchasers. In the fore part of September he succeeded in interesting with fair assurance of success a prospective purchaser named Louis I. Frank.    Up to that time no agreement, oral or written, had been made between the parties in regard to a commission.    On September 13, 1917, defendant went to plaintiff's office to discuss propositions plaintiff had told him of and the latter then asked for a written agreement regarding the amount of his commission for selling the property. This was agreed upon and put in writing, as follows:

"NATHANIEL J. GREENBERG,
     "Real Estate,
   "730 Penobscot Building,
     "Detroit.
                              "September 13, 1917.
   "I, N. Sakwinski, hereby agree to pay you, Nathaniel J. Greenberg, the sum of eight hundred dollars ($800.00) as your commission upon the sale of my

apartment house, located at 1860-66 East Grand boulevard, known as the Cadillac apartments, payment to be made at the time of settlement of sale. No other parties to be connected with the sale.

"N. Sakwinski.

"I hereby accept the above.

"N. Greenberg."

They discussed various possible deals plaintiff had worked on, and, as Frank seemed the most promising, they went together on that day to his office where, after considerable discussion and negotiation regarding price, terms, etc., a written agreement was entered into between defendant and wife and Frank by which they agreed to sell him the property for $101,000 payable as follows: $300 down on signing the contract; $41,000 to be paid by delivery of a warranty deed from Frank to them of certain property he owned, at an agreed value of $50,000 subject to a mortgage of $9,000 which they agreed to assume, Frank to assume a mortgage of $46,000 on the apartment building he was purchasing, and the balance of $13,700 in cash on concluding the transaction, which was to be done within 25 days after delivery by the respective parties to each other of abstracts of their properties brought down to date. The $300 cash down was paid by Frank when the contract was signed and the abstracts agreed upon between the parties were duly delivered, but the deal was never consummated owing, as plaintiff claimed, to the fact defendant later agreed to take a certain contract worth $14,000 from Frank in lieu of the final cash payment of $13,700, Frank, however, being ready and willing at all times to pay cash if defendant wished, and while that matter was pending defendant unexpectedly and without any notice to plaintiff or Frank sold the property to other parties.

Defendant claimed on the other hand that Frank did not have the money and could not make the cash

payment to him, but was attempting to raise the money on a land contract which he owned and desired defendant to take, which was not acceptable; after which plaintiff advised defendant that Frank could raise $5,000 in cash which defendant agreed to take rather than let the deal fall through and the parties met at Frank's office where he admitted he could not even raise the $5,000 in cash which he had offered, whereupon defendant called the deal off and sold to other parties.

When plaintiff learned that defendant had sold the property to others he demanded his commission and on defendant's refusal this action was brought. Upon the trial the court permitted the parties to go fully into what was said and done subsequent to the signing of the written agreement for a commission, but held that all testimony as to previous negotiations or understandings upon the subject was merged in the writing and was not admissible to vary its terms or affect its construction.

At the conclusion of plaintiff's testimony defendant's counsel moved for a directed verdict on the two grounds that the writing was not sufficient under the statute, and the condition precedent in it was not fulfilled, which was denied. This motion was renewed at the conclusion of all the testimony, and plaintiff's counsel then also asked for a directed verdict in his favor. Both motions were denied and the case submitted to the jury resulting in a verdict and judgment for plaintiff in the sum of $865. Defendant moved for a judgment *non obstante,* which was denied, followed by a motion for a new trial with request for written findings and conclusions of law, which were filed denying said motion. Written exceptions were thereupon filed to the court's findings.

Defendant's 24 assignments of error are grouped into five propositions as follows:

"1. The written agreement here sued upon, Exhibit 1, is void under the amendment to the statute of frauds.

"2. Under the terms of Exhibit 1, no commissions were payable or owing until title passed and the sale was consummated, which was never done, and, therefore, no commissions were earned.

"3. Plaintiff did not prove such performance of his contract as would entitle him to a commission.

"4. The court erred in charging the jury that Exhibit 1 gave plaintiff an exclusive agency for the sale of defendant's property, and if terminated by him without notice, the plaintiff would be entitled to recover.

"5. Plaintiff did not procure a purchaser ready, able and willing to buy."

Of the last contention it is sufficient to say that the testimony of the parties was in conflict upon whether Frank, the purchaser whom plaintiff produced, was ready, able and willing to pay. A special question was submitted to the jury upon that issue and answered in the affirmative.

As to the fourth contention the court held the concluding sentence in the agreement ("no other parties to be connected with the sale"), gave plaintiff an exclusive agency of the sale of the property, upon which there was no time limit, instructing the jury, "that said agreement could not be terminated by defendant without a notice to plaintiff, and, if defendant did not give plaintiff such notice, the plaintiff is entitled to recover the commission agreed upon when the sale of this property was made through other persons."

Defendant's fourth contention, to the effect that the court committed error in instructing the jury plaintiff was given an exclusive agency for the sale of this property by the terms of the agreement and if terminated by defendant without notice plaintiff would be entitled to recover, is based chiefly on the claim that plaintiff's counsel elected to stand on the second count.

in his declaration, which averred that on signing and delivering the land contract, between defendant and his wife and Frank, plaintiff's commission was earned and he was entitled to the same. The election is claimed to have been made early in the trial during the argument of an objection to a line of cross-examination of plaintiff by defendant's counsel when the latter asked plaintiff's counsel: "Q. Do you claim your right to recover exclusively on that proposition?" and he replied, "I have three counts in my declaration, if any one of them is decided in my favor plaintiff is entitled to a verdict. I am ready at this time to plant it on one count in the declaration," and being further interrogated met the challenge by asserting he did so. Asked by the court which count, he named the second and said, "We might as well have that question determined now." To which the court assented and both counsel made lengthy arguments upon various phases of the case, the jury in the meantime being excused. During this exchange of views various matters were discussed and counsel for defendant apparently changed his attitude somewhat. With permission of the court he withdrew his previously given consent to admission of the agreement in evidence and interposed an objection to it. This proceeding was objected to by plaintiff's counsel for various stated reasons, but after the discussion had run its course the court ruled that the written agreement as to a commission was admissible and overruled plaintiff's objection to the cross-examination which started the debate. Taking of testimony before the jury was then resumed at the point where it had been halted for a time.

We do not find anything further in the course of the trial to indicate that counsel abandoned all but one of his counts, or the court or opposing counsel then regarded his assertion in side-bar debate that he was ready "at this time" to plant it on one count was a

formal election or went beyond the argument then in progress, or were in any way misled. When both parties rested plaintiff's counsel requested the court to direct a verdict on the ground that plaintiff's agency was exclusive with no time limit and defendant could not terminate it without notice to plaintiff. No suggestion was then made that he had elected to abandon that claim. The three special counts fully advised of all plaintiff claimed, were cumulative, not inconsistent and required no election. The testimony was in conflict as to whether there was notice of termination of the agency and that issue was left to the jury by the court under proper instructions. We discover no error in that particular.

The claim that no commission was payable, or owing, until title passed and the sale was consummated, under the language of the contract that payment was to be "made at the time of settlement of the sale," calls for no extended discussion. If plaintiff fully performed on his part and defendant's mal-conduct rendered it impossible to make "settlement of the sale" according to the land contract he had signed he is estopped from taking advantage of his own wrong.

Counsel's contention that this written agreement is void under the amendment to the statute of frauds, Act No. 238, Pub. Acts 1913 (3 Comp. Laws 1915, § 11981), requiring agreements for commissions on sale of real estate to be in writing, is predicated on its failure to specify the selling price, or terms of sale; and it is urged that to be valid under the statute of frauds a contract to pay a commission on sale of real estate, like any other contract required to be in writing, must be complete in all its parts and leave nothing to rest in parol. It may be conceded that the agreement as executed by the parties was an awkward effort, left by the scrivener in the particulars mentioned unilateral and what might in a sense be

called a satisfaction contract. But it was a valid contract of agency so far as it went. It contained a promise in writing to pay a commission "for or upon the sale of any (an) interest in real estate." It specified plainly the parties to the agreement, nature of the service to be performed, property to be sold and commission to be paid. That plaintiff accepted this contract with a disadvantageous contingency to him, does not impair its validity. All such contracts necessarily involve a contingency that the agent may not be able to produce a purchaser ready, able and willing to purchase at the generally specified price and terms the seller has agreed to accept, and in this case for a price and on terms the seller was satisfied with and willing to accept. Until he did so, it may be conceded the contract was not much of an asset to the agent. But the seller in this case did accept them in writing, by signing a legal and enforceable land contract to sell the property to the purchaser plaintiff produced, thus satisfying the statute of frauds.

This situation is well illustrated in principle by Justice OSTRANDER, in *Cochran* v. *Staman*, 201 Mich. 630, as follows:

"The writing relied upon, in my opinion, is a promise to pay a commission for or upon a sale of real estate. So far as the statute of frauds is concerned, no more is required. Suppose that the seller, in this case, and the proposing buyer, produced by plaintiff, had agreed upon terms of payment and completed a sale and conveyance of the premises for $100 an acre. In an action for the commission, could the seller defend upon the ground that the promise to pay the commission was not in writing. I think not."

As we have pointed out, there were material issues of fact as to events subsequent to the parties entering into this written agreement for a commission. Apparently the most vital and square cut of these was whether Frank was ready and able to pay the $13,700

final payment according to the terms of the land contract between him and defendant and wife. This was submitted to the jury as a special question at defendant's request and answered in the affirmative.

The material issues of fact raised by the testimony were left to the jury under proper instructions.

We find no prejudicial error in this record calling for reversal, and the judgment will stand affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.