### TYSON v. HERRLE.

BROKERS—COMMISSIONS—CONTRACTS—PERFORMANCES.

> Defendant owner of retail liquor business, conducted on leased premises, did not become obligated to plaintiff broker under written contract to pay commission "upon completion of deal" where plaintiff never did complete the deal, the contract did not impose a duty upon defendant to secure from the landlords a lease similar to the one he had with them, and trial court did not make a finding that defendant's actions prevented plaintiff from securing the lease for the purchasers and completing the deal.

Appeal from Wayne; Rashid (Joseph G.), J. Submitted July 17, 1958. (Docket No. 61, Calendar No. 47,558.) Decided October 13, 1958.

REFERENCES FOR POINTS IN HEADNOTES

8 Am Jur, Brokers § 180.

Real-estate broker's right to commissions as affected by failure or refusal of customer to comply with valid contract. 51 ALR 1390, 73 ALR 926.

Action in common pleas court by William B. Tyson, doing business as Tyson & Company, against Walter H. Herrle for real-estate dealer's commission. Judgment for defendant. Plaintiff appealed to circuit court. Judgment for defendant. Plaintiff appeals. Affirmed.

*Larry Middleton* (*Harold Helper*, of counsel), for plaintiff.

*Richard D. Dunn*, for defendant.

DETHMERS, C. J. Defendant owned a liquor business, operated, under State license, on premises leased to him at a monthly rental of $250. The lease also covered 2 adjacent vacant lots used for parking purposes. Plaintiff, a real-estate broker, employed a salesman. He presented to defendant a written instrument signed by 2 persons, hereinafter called purchasers, offering to purchase the license and business for $27,500. The offer contained the following provision: "This offer is contingent upon securing of 5 (year) lease at a monthly rental of $250 dollars per month which includes 2 four-room flat above premises." Defendant signed an acceptance of the offer, which contained a provision that "upon completion of this deal" he would pay plaintiff a commission of $2,500 for services rendered. Defendant testified that, at that time, he told the salesman that he could have it if he could close the deal within 10 days. Plaintiff then attempted to obtain a lease for the purchasers on the above-specified terms. The 2 landlords refused to give such lease, saying that they wanted more money. Plaintiff testified that one of them also told him that defendant had changed his mind about selling. The landlord in question denied having made such statement to plaintiff. One of the purchasers testified that thereafter defendant

told them that the landlords wanted $350 per month rent and that they then told plaintiff that they had no deal unless he could get a lease similar to the one in effect and that they would hold off on the deal until the matter of such lease was "straightened out." Plaintiff testified that within a few days after the acceptance was signed defendant told him that he had changed his mind and would not go through with the deal with purchasers. Defendant denied this on the witness stand. A couple of weeks later defendant sold the license and business to another for $28,500 and the landlords signed a written statement to the effect that they would grant him a 5-year lease at a rental of $250 per month, plus the amount of the taxes assessed against the 2 lots; subsequently, they executed such lease.

Plaintiff sued in the common pleas court of the city of Detroit, on the agreement, for the $2,500 commission. The trial judge held for plaintiff. On appeal to circuit court the judgment below was reversed and judgment entered of no cause for action. Plaintiff appeals here.

Much of the discussion in the case has centered around the question whether plaintiff produced a purchaser ready, willing and able to purchase on defendant's terms. It is to be noted, however, that this is not a suit on a listing agreement. By the contract on which this suit is brought, defendant agreed to pay plaintiff "upon completion of this deal." Completion of the deal was contingent, under the written offer to purchase, upon securing for purchasers a 5-year lease at a monthly rental of $250. Such lease was never secured nor was the deal completed. The trial court's decision was based on a holding that the stated condition in the offer to purchase was for the benefit of the purchasers and not of defendant and that, therefore, he could not take advantage of its nonoccurrence. That misses the point, how-

ever, that defendant was not obligated to pay plaintiff until the deal was completed, and that all plaintiff ever did for defendant was to furnish him with a contract to purchase which contained a contingency such as to leave it utterly unenforceable in his hands as against the purchasers. For such service on plaintiff's part defendant did not agree to pay. The eventuality upon which defendant was to become obligated to plaintiff never having occurred, defendant is not obliged to pay him. *Schmidt* v. *Maples,* 291 Mich 225; *Fleming* v. *James S. Holden Co.,* 200 Mich 519; *Antisdel* v. *Canfield,* 119 Mich 229.

Plaintiff urges that he is entitled to recover, even though the deal was not completed, because such completion was prevented by defendant's failure to perform his undertaking to secure a lease for the purchasers. The agreement imposed no such duty on defendant.

Plaintiff cites *Cook* v. *Blake,* 98 Mich 389; *Hubbard* v. *Leiter,* 145 Mich 387; *Greenberg* v. *Sakwinski,* 211 Mich 498; and *Hayes* v. *Beyer,* 284 Mich 60, for the proposition that he is entitled to recover if completion of the deal failed because defendant prevented the securing of the lease. The cited cases support the contention. The difficulty for plaintiff is that the trial judge did not find as a fact that defendant did obstruct or prevent the securing of the lease and there is insufficient evidence to prove it. Plaintiff describes as acts preventing securing of the lease, (1) defendant's statement to the purchasers that the landlords wanted $350 per month and failure to state that they would take $250 per month, plus the taxes on the lots, and (2) defendant's sale of the business to another who secured such lease. This argument is scarcely persuasive in view of plaintiff's negotiations with and being told by one of the landlords that they wanted more rent, and his reply that he would have to discuss the matter with his purchasers, fol-

lowing which neither he nor his purchasers ever again contacted the landlords, although no reason appears why they should not have done so and secured a lease such as the subsequent purchaser ultimately did. Plaintiff cites *Broomfield* v. *Abass,* 320 Mich 291, as authority that the law does not require one to do a needless thing. The fact that the landlords wanted more money is not shown by the evidence to be chargeable to defendant. His statement to plaintiff and purchasers that the landlords wanted more money, which plaintiff had already learned from one of the landlords, did not make further negotiations with the latter impossible or a useless thing. If, as plaintiff testified and defendant denied, defendant did tell plaintiff within a couple of days after signing the acceptance that he had changed his mind about selling to purchasers, the negotiation of a lease between landlords and purchasers would, nevertheless, have made the offer and acceptance effective and enforceable against defendant. Such course of action would hardly have been useless. Defendant testified, and it was not denied at trial, that he gave plaintiff's salesman 10 days following signing of the acceptance to close the deal. It is not shown that defendant's sale to another occurred until after the expiration of that 10-day period. Under the circumstances, it is understandable why the trial court did not make a finding that actions on defendant's part prevented securing the lease for purchasers and completion of the deal. Such finding, if made, would not have been supported by the evidence.

Affirmed, with costs to defendant.

Carr, Kelly, Smith, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.