LANDA *v.* SCHMIDT.

PAWLAK *v.* SAME.

1. CONTRACTS — CONDITIONS — PERFORMANCE — TRANSFER OF LIQUOR LICENSE.

> Would-be purchasers were properly not subjected to liability for liquidated damages and for real-estate commission under preliminary agreement for purchase of a bar, where such contract was expressly conditioned upon approval of transfer of the liquor license by the liquor control commission and such approval was not forthcoming except upon such purchasers' compliance with requirement that they dispose of all their vendor interest in bar they had recently sold, a matter not within the contemplation of the parties, not referred to in the contract, and a divestiture they were unwilling to make.

2. SAME—METHOD OF PERFORMANCE—DISCHARGE.

> One of the parties to the contract cannot, by reason of impossibility of performing the contract according to its terms, insist on a different method of performance in order that he may obtain substantially the same result that he would have obtained if the contract had been performed instead of being discharged.

Appeal from Wayne; Targonski (Victor), J. Submitted January 10, 1961. (Docket Nos. 53, 54, Calendar Nos. 48,616, 48,617.) Decided March 1, 1961.

Two actions, one by Albert Landa, doing business as Albert Landa & Company, for real-estate broker's commission, and one by Joseph Pawlak for liquidated damages, against Andrew C. Schmidt and Elsie M. Schmidt based on defendants' failure to perform

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 12 Am Jur, Contracts § 328.

contract and complete purchase of bar. Cross declaration for return of deposit. Judgments for defendants. Plaintiffs appeal. Affirmed.

*Levine & Zweig* (*Gerald Benjamin*, of counsel), for plaintiffs.

*Glassen, Parr, Rhead & McLean* (*L. D. Parr*, of counsel) and *Burgess & Mead* (*Hudson Mead*, of counsel), for defendants.

Edwards, J. These are suits to enforce a contract in relation to purchase of a bar in the city of Detroit. The preliminary sales agreement contained a proviso making purchase contingent on approval by the Michigan liquor control commission, but pledging the parties to take "the necessary steps" to effect the transfer.

On application for transfer of the license, the Michigan liquor control commission insisted as a condition precedent that the defendants, the prospective purchasers, divest themselves of a chattel mortgage and promissory notes pertaining to the furniture and fixtures of another bar in Lansing which they had previously sold. This, defendants refused to do, although the plaintiff, seller, offered to accept this chattel mortgage in lieu of down payment.

Plaintiff in one suit is the seller and, in the other, the real-estate agent, who seek respectively to recover the liquidated damages and commission provided for "default." Defendants also cross-declared for return of their deposit.

The Wayne circuit judge who heard the actions on stipulated facts held that divestiture was not a "necessary step" within the contemplation of the agreement, and entered judgments of no cause for action as to plaintiffs' suits. He also entered judgment for

defendants as cross-plaintiffs for return of the $1,000 deposit. Plaintiffs appeal.

The relevant facts were stipulated before the trial judge as follows:

"On or about March 15, 1958, the defendants made an offer to purchase a certain bar, known as Greenleaf Bar and Lounge, at 6628 Van Dyke avenue, for the sum of $33,000, with the sum of $1,000 paid with the offer to purchase. * * *

"This offer was accepted and a preliminary sales agreement between the parties was entered into on March 19, 1958. By the terms of the original agreement, the plaintiff, Albert Landa, d/b/a Albert Landa & Company, was to be paid a commission in the amount of $2,500 'upon the completion of [the] transaction.'

"The preliminary sales agreement, dated March 19, 1958, provided, among other things: 'It is distinctly agreed and understood between the parties * * * that immediately after the execution of this agreement the necessary steps shall be taken to have the said class C license transferred from the seller to the buyers by the Michigan liquor control commission, and the consummation and closing of this transaction and the execution and delivery of the various instruments and the payment of the moneys by the buyers to the seller shall depend solely upon the transfer of said license from the seller to the buyers and the approval of said transfer by the Michigan liquor control commission.'

"It further provides in paragraph 14: 'It is further agreed between the parties herein that if either party fails to comply with and complete the sale and purchase of said business, license and equipment in conformity with the terms herein, then the party in default shall pay the broker his commission of 10% of the purchase price and pay to the other the sum of $2,000 as liquidated damages. It is understood that the liquidated damages agreed upon herein are being so agreed upon by the parties for the reason

that they recognize that the actual damages might exceed the amount agreed upon by the parties, and they are, therefore, agreeing upon the sum herein indicated for the purpose of limiting their liability.'

"The 17th paragraph of this preliminary agreement provided: 'It is further agreed and understood that the seller hereby accepts a land contract in the amount of $15,000 securing property located at 905 East Taylor street, Flint, Michigan, to apply toward the down payment in the same amount and the buyers agree to assign same to the seller. In the event the said land contract is less than $15,000 the deficiencies shall be paid for in cash.'

"On March 19th the purchasers also executed a request to the director of licensing of the Michigan liquor control commission for a waiver of the commission's 1-year rule to permit them to get back into the bar business on the grounds of being unable to secure employment due to their age, the buyers having previously sold their bar business, and under commission rules being precluded from entering into the bar business again for a period of 1 year from and after the sale of the former bar business.

"On April 2, 1958, Edward F. Maloney, director of the license division of the Michigan liquor control commission, advised the purchasers by letter that their request for the waiver of the 1-year rule had been granted by the commission at a meeting held March 31, 1958, with the proviso that in the event favorable consideration was given to said application that they would have to dispose of all interest which they might still be holding in their former class C license establishment by virtue of chattel mortgage, promissory notes, et cetera.  *  *  *

"On April 10, 1958, counsel for the defendants advised the real-estate broker, Mr. Landa, that he had been retained by the purchasers to attempt to clear their deal for the purchase of Greenleaf Bar and Lounge with the Michigan liquor control commission. He advised Mr. Landa that he had been unable to accomplish this objective. He further indicated in his

letter of that date that he had discussed the matter
with a Barbara Rennie of the liquor commission and
that she had indicated that the commission would un-
der no circumstances allow the purchasers to retain
their land contract as security interest in the Hof-
brau in Lansing (the bar which the purchasers had
previously owned and which they had sold some time
before the transaction here under consideration). It
was further indicated that unless such land contract
as security interest was disposed of that the liquor
commission would not permit the Schmidts to com-
plete their purchase of the Greenleaf Bar.

"Mr. Parr, as counsel for the Schmidts, according-
ly requested return of the down payment as provided
for in the agreement between the parties since there
was no possibility of completion of the deal.

"Mr. Landa replied to his request by his letter of
April 11, 1958, in which he indicated that he intended
to apply the deposit in his possession towards his
commission in accordance with the preliminary sales
agreement. It was Mr. Landa's position that the
Schmidts had breached their contract in not wishing
to go through with the Greenleaf Bar purchase. The
Schmidts in turn answered through their counsel by
letter of April 14, 1958, in which they indicated that
they were ready, willing and able to perform if the
broker was able to secure approval by the liquor
commission since they were unable to do so within
the terms of the contract between the parties.

"A supplemental agreement was prepared and
submitted to the defendants by virtue of which the
sellers were willing to accept the chattel mortgage
on the Hofbrau in Lansing in the amount of $18,000
in lieu of the chattel mortgage on the bars and fix-
tures of the Greenleaf Bar in the amount of $17,000
as provided for in the second paragraph of the pre-
liminary sales agreement between the parties. The
proposed supplemental agreement further provided
that there would be an adjustment between the bal-
ance on the Hofbrau bar chattel mortgage and the
chattel mortgage provided in paragraph 2 to bring

it in conformity with the agreement between the parties. The defendants refused to execute such an agreement. The liquor commission continued adamant in its position that no transfer would be approved until the purchasers, the defendants herein, had disposed of all interest in the Hofbrau bar transaction, be they chattel mortgage, promissory notes or land contract interests. This the Schmidts refused to do, claiming that it was not within the contemplation of the parties.

"These 2 lawsuits followed; one by the plaintiff Landa being for real-estate brokerage commission in the amount of $3,300 allegedly due him under the preliminary sales agreement entered into by Pawlak and Schmidt on March 19, 1958. The action by the plaintiff Pawlak is for the sum of $2,000, being the stipulated sum of liquidated damages provided for in the same agreement."

The trial judge decided the actions by construing the language of the contract as not requiring the divestiture referred to:

"We must for purposes of disposition of this cause determine what was the intent of the parties with reference to the words 'necessary steps' to be taken to have the liquor license transferred by the liquor control commission. It is our opinion that the only reasonable construction which can be placed on these words is that the defendants were required to do such things as were reasonably within the contemplation of the parties at the time they signed the preliminary sales agreement on March 19, 1958. There is nothing in that document which would justify a conclusion that the defendants contemplated divesting themselves of their security interest in the Hofbrau chattel mortgage, nor is there anything there that would justify the conclusion that plaintiffs contemplated that the defendants would be required to so divest themselves. There is no liquor control commission regulation which precludes ownership or possibility of ownership of 2 class C bars by 1

person at the same time. In fact it is a matter of common knowledge in this community that there are persons who own more than 1 class C license simultaneously. There is no argument that the liquor commission has the authority within the exercise of its discretion to administratively make this requirement as a condition precedent to the transfer of the license to the Schmidts but they do not have the power to make new contracts between the parties and as between the parties no liability can be imposed by administrative decision in the absence of a regulation to such effect which would put the parties on notice at the time of their contract.

"Plaintiffs urge that they are entitled to recovery even though the deal was not completed because such completion was prevented by defendant's failure to perform his undertaking to divest himself of a chattel mortgage interest in the Hofbrau bar as stipulated by the Michigan liquor control commission as a condition precedent to their waiver of the 1-year rule on re-entry into the liquor business. The agreement imposed no such duty on the defendant as we have indicated hereinabove (see *Tyson* v. *Herrle,* 354 Mich 298). Accordingly a judgment of no cause of action for the defendants against the plaintiffs shall be entered in both causes, and further, a judgment shall be entered in behalf of the defendants against the plaintiff Landa for the return of the $1,000 heretofore deposited by the defendant with the plaintiff Landa in his capacity as broker under the terms of the offer to purchase and acceptance signed between Landa and the defendant Schmidt."

Liability under this contract was expressly conditioned upon approval of transfer of the liquor license by the Michigan liquor control commission. See 5 Page on Contracts (2d ed), § 2598. It is undisputed that this never occurred, but plaintiffs' suits are founded upon the claim that defendants breached a promise to take "the necessary steps" to secure this approval.

We recognize as appellants' contend that if defendants failed to take "the necessary steps" contemplated by the parties, or deliberately placed obstacles in the path of the approval referred to, they would not thereby escape liability. *Hayes* v. *Beyer,* 284 Mich 60.

In this record, however, we find evidence that defendants did take steps to complete the transfer. They did apply to the liquor control commission. They did seek a waiver of the 1-year rule. They hired an attorney, instructing him to attempt to secure approval of the transfer of the license. They offered to complete the transaction if plaintiffs could secure the required approval.

It is, of course, true that they refused to divest themselves of their chattel mortgage on the Lansing bar either by transferring it to plaintiffs, or to third parties. But the contract which they had signed made no reference to such an obligation. As far as this record is concerned, divestiture might represent a substantial change in the economic results of the contract contemplated by defendants.

We find no evidence that divestiture of interest in another bar is required of a proposed licensee by either State law or published regulation of the Michigan liquor control commission. The record does not show that this possibility was discussed by or known to the parties at the signing of the contract. Hence, we cannot agree with plaintiff appellants in their contention that a requirement of divestiture should be implied as 1 of the "necessary steps" contemplated by the contract.

It appears to us, as it did to the trial judge, that achievement of the basic purpose of this contract became impossible absent the defendants selling or assigning an asset which was not referred to in the contract either expressly or by reasonable implication.

"One of the parties to the contract can not, by reason of impossibility of performing the contract according to its terms, insist on a different method of performance in order that he may obtain sub-stantially the same result that he would have obtained if the contract had been performed instead of being discharged." 5 Page on Contracts (2d ed), § 2711, p 4779.

The condition of liquor control commission approval upon which the sale was to be consummated never occurred. Hence, under this contract, no liability was created. *Tyson* v. *Herrle*, 354 Mich 298; *Fleming* v. *James S. Holden Co.*, 200 Mich 519.

Affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.