## TRINGALI v LAL

Docket No. 87505. Submitted March 3, 1987, at Detroit. Decided November 3, 1987. Leave to appeal applied for.

Patricia and Carmelo Tringali brought a medical malpractice action against Sarla Lal in the Macomb Circuit Court. Plaintiffs appealed from a judgment, Frank E. Jeannette, J., on a jury verdict for defendant. Plaintiffs claimed that the court should have given the requested instruction on multiple proximate causes. They also ask that other requested instructions not given by the trial court be given on retrial.

The Court of Appeals *held:*

1. The instructions, read as a whole, correctly defined proximate cause and accurately stated the law. They do not require reversal.

2. Plaintiffs' other issues were not preserved for appeal.

Affirmed.

1. APPEAL — JURY INSTRUCTIONS.

Instructions of a trial judge to a jury must be reviewed as a whole and not in selective excerpts; if the instructions are erroneous or inadequate, reversal is required only where a failure to reverse would be inconsistent with substantial justice.

2. APPEAL — SUPPORTING CITATIONS.

A statement of position without a supporting citation is insufficient to bring an issue before the Court of Appeals; a party

REFERENCES

Am Jur 2d, Appeal and Error §§ 533-538, 565, 673, 696, 810-817, 891-894.

Construction and application of provision of Rule 51 of Federal Rules of Civil Procedure requiring party objecting to instructions or failure to give instruction to jury, to state "distinctly the matter to which he objects and the grounds for objections". 35 ALR Fed 727.

Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

Propriety and prejudicial effect of instructions in civil case as affected by the manner in which they are written. 10 ALR3d 501.

See also the annotations in the Index to Annotations under Instructions to Jury.

should not leave it to the Court of Appeals to search for authority to sustain or reject his position.

3. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.
   A party's objection to the court's refusal to give a requested jury instruction must be specific in order to preserve the issue for review.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Monica Farris Linkner*), for plaintiffs.

*Barbier, Petersmarck, Tolleson, Mead & Paige, P.C.* (by *James A. Callahan*), for defendant.

Before: M. J. KELLY, P.J., and J. B. SULLIVAN and P. R. JOSLYN,* JJ.

P. R. JOSLYN, J. Plaintiffs, Patricia Tringali and her husband, Carmelo Tringali, filed a medical malpractice complaint against defendant, Sarla Lal, M.D., in the Macomb Circuit Court alleging that defendant failed to properly diagnose Patricia's condition and to timely refer Patricia to a· gastroenterologist for treatment. On June 24, 1985, the jury returned a verdict finding defendant negligent but finding no proximate cause. Judgment was entered on June 27, 1985. Plaintiffs moved for a new trial, which was denied by order dated August 26, 1985. Plaintiffs appeal as of right.

Trial on this matter commenced on June 12, 1985. Defendant, a general practitioner, was called under the adverse witness statute, MCL 600.2161; MSA 27A.2161. Defendant testified that she first saw Patricia Tringali on June 30, 1975. At that time, plaintiff was experiencing severe migraine headaches, probably caused by tension. Between June 30, 1975, and July 29, 1975, defendant saw

---

   * Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff four times. On July 29, 1975, defendant hospitalized plaintiff at Harrison Hospital until August 6, 1975.

On February 7, 1976, defendant prescribed Valium and Tylenol 3 for plaintiff's headaches. By October, 1976, plaintiff's blood pressure was up. Defendant gave her a physical examination, which was normal.

On February 28, 1977, plaintiff visited defendant complaining of numbness of the right hand and gastrointestinal spasms. X-rays were ordered for plaintiff's hand and Bentyl was prescribed for her spasms. Plaintiff returned on March 17, 1977, complaining of diarrhea. At that time, defendant prescribed hemorrhoid suppositories and Lomotil. Defendant also told plaintiff about having a sigmoidoscopy, thinking plaintiff had colitis, and defendant wanted to rule it out." However, plaintiff did not want the sigmoidoscopy performed.

Defendant hospitalized plaintiff on March 21, 1977, until March 25, 1977, for irregular heavy uterine bleeding that plaintiff had been experiencing intermittently for the preceding two and one-half years, numbness of the right hand and mucous stools. After defendant made a physical examination of plaintiff, her impressions were that plaintiff had dysfunctional uterine bleeding, right carpal tunnel syndrome, mucous colitis and arthritis. Defendant called in specialists for everything except plaintiff's arthritis.

During hospitalization, plaintiff was examined by internist Dr. Douglas Wood. Dr. Wood was to treat plaintiff for difficulty on open urination. Dr. Wood was also to examine plaintiff relative to her mucous stools. Dr. Wood noted that plaintiff was hesitant to have a sigmoidoscopy at the time. Plaintiff also refused to have a urological work-up done, as Dr. Wood recommended. Defendant stated

that every time she spoke with plaintiff while she was hospitalized, she told plaintiff that she should have a sigmoidoscopy performed. Defendant also explained the reasons for the test to plaintiff and told her how the procedure was performed. However, plaintiff told defendant that she did not want to have the test performed.

Upon plaintiff's discharge from the hospital, defendant's diagnosis was that she had mucous colitis, but defendant could not rule out ulcerative colitis. In her discharge summary, defendant wrote that, if plaintiff had any gastrointestinal tract problems, plaintiff should have the sigmoidoscopy performed and should be examined by a gastroenterologist.

On June 3, 1977, plaintiff visited defendant's office. The chart notation indicates that defendant suggested a sigmoidoscopy, but again plaintiff refused. Defendant also gave plaintiff two or three names of gastroenterologists that she could contact.

The deposition of Richard V. Utarnachitt, M.D., was read into evidence. Plaintiff was examined on November 9, 1977, by Utarnachitt, who was a gastroenterologist. He scheduled a colonoscopy for plaintiff, which is similar to a sigmoidoscopy except for the fact that the instrument used is longer and the entire colon is inspected. The colonoscopy revealed that plaintiff had ulcerative colitis. Therefore, Utarnachitt prescribed Azulfidine and put plaintiff on a diet. On November 17, 1977, plaintiff was hospitalized because she was not responding to treatment, the diarrhea had not stopped, and she still had rectal bleeding. On November 24, 1977, plaintiff was discharged from the hospital.

On November 26, 1977, plaintiff was rehospitalized due to bleeding and abdominal pain. On De-

cember 3, 1977, plaintiff developed toxic megacolon, a dilation of the large intestine as a result of her ulcerative colitis condition. Plaintiff's toxic megacolon did not respond to medication, so on December 5, 1977, Dr. Parnagian performed a subtotal colectomy with ileostomy. Dr. Parnagian removed plaintiff's right colon, transverse colon, and left colon. He brought the ileum out by ileostomy in the right lower abdomen. Consequently, plaintiff has to move her bowel into a bag attached to her skin, because the rectum has no function at all.

Dr. Parnagian then took over plaintiff's principal treatment. Parnagian performed sigmoidoscopy exams on plaintiff several times in April and August, 1978. In December, 1979, Parnagian performed a sigmoidoscopy on plaintiff and that was the last time he saw her.

Plaintiff then testified in her own behalf. She stated that, prior to 1975, she was in good health. Plaintiff began going to defendant in the summer of 1975 for headaches and she was given medication, injections and was hospitalized for ten days. The headaches eventually subsided after the summer of 1975.

Plaintiff testified that she visited defendant through 1976 and 1977, and at no time did she ever refuse a sigmoidoscopy nor was she afraid or embarrassed to have the test done. In fact, plaintiff stated that defendant told her that a sigmoidoscopy was not necessary.

In November of 1977, plaintiff's condition had gotten worse and as a result she went to see Dr. Utarnachitt, who immediately hospitalized her. Dr. Parnagian performed surgery on plaintiff. After the surgery, plaintiff saw the huge incision and plastic bag filled with stool, and she felt crazy, dirty, became totally irrational, began throwing

things and yelling. Plaintiff refused to listen to lessons given on care of the colostomy bags, nor did she want to deal with it. Plaintiff saw a psychiatrist for a year and a half. She also received medication and could not care for the bag until a month after she went home. Plaintiff testified that she constantly worries about leaks and odors; she no longer is outgoing; she is afraid to be around dogs; she is afraid to stay overnight elsewhere; she has had leaks at business and social events; and her sexual relations have changed because of the bag.

Following deliberations, the jury found defendant negligent but found no proximate cause.

On appeal, plaintiffs claim that the trial judge erred in refusing to instruct the jury on an applicable jury instruction as requested by plaintiffs. Jury instructions must be read as a whole, not dissected piecemeal and assigned error in isolated portions. *Willoughby v Lehrbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986). Under MCR 2.516(D)(2), the trial court is required to give pertinent portions of the Michigan Standard Jury Instructions if they are applicable and accurately state the law. The trial court has the discretion to determine the applicability of a requested SJI, *Johnson v Corbet,* 423 Mich 304, 326-327; 377 NW2d 713 (1985). If the court determines that the instruction is applicable, it is required to be given to the jury. However, failure to give the instruction will not result in reversal unless failure to set aside the verdict would be "inconsistent with substantial justice." 423 Mich 326. See also *Cornforth v Borman's, Inc,* 148 Mich App 469; 385 NW2d 645 (1986).

Plaintiffs contend that the trial court erred in failing to give SJI2d 15.03. Plaintiffs argue that the court's failure to give the instruction is error

such that failure to set aside the verdict would be inconsistent with substantial justice. SJI2d 15.03 reads as follows:

> There may be more than one proximate cause. To be a proximate cause, the claimed negligence of the defendant need not be the only cause nor the last cause. A cause may be proximate although it and another cause act at the same time or in combination to produce the occurrence.

The note of use following the instruction supports the proposition that SJI2d 15.03 is only to be used in conjunction with SJI2d 15.04, 15.05, or 15.06. Herein, plaintiff requested that the trial judge only instruct the jury on SJI2d 15.03. However, there was never any request made by plaintiff for the latter instructions.

Plaintiffs argue on appeal that they were prejudiced when the trial court refused to give the requested instruction, because the jurors were deprived of the benefit of being informed that they could find in plaintiff's favor so long as defendant's negligence was a proximate cause of plaintiff's injury. A review of the trial court's instructions to the jury cannot support plaintiffs' claim. The instructions, when read as a whole, correctly defined proximate cause and accurately stated the law and were consistent with the instruction in *Kirby v Larson*, 400 Mich 585; 256 NW2d 400 (1977). Therefore, the trial judge did not err in refusing to give plaintiffs' requested jury instruction.

Plaintiffs also claim that the trial court erred by refusing to give SJI2d 6.01 as requested by plaintiffs. First of all, it must be noted that plaintiffs framed their argument of this issue such that they only ask this Court for prospective relief on retrial. They do not specifically argue that the trial

court erred in denying their requested jury instruction, but rather, that the trial court *should* give the instruction when the case is retried.

Plaintiffs argue that they should be given the benefit of SJI2d 6.01. However, they offer no support for that proposition. Arguments without supporting citations are considered to be abandoned on appeal. A party may not leave it to this Court to search for authority to sustain or reject its position. A statement of position without supporting citation is insufficient to bring an issue before this Court. *Butler v DAIIE,* 121 Mich App 727, 737; 329 NW2d 781 (1982). Plaintiffs' request for prospective relief, even if this Court could provide it, is meritless. It is based on the assumption that all the evidence at a second trial would be identical to that of the first trial.

Assuming arguendo that plaintiffs were to receive relief, this Court finds that plaintiffs failed to preserve this issue for appeal. Plaintiffs' trial counsel did not give specific reasons for his objections to preserve this issue for appeal. *Gainey v Sieloff,* 154 Mich App 694, 705; 398 NW2d 498 (1986); GCR 1963, 516.2, now MCR 2.516(c).

Plaintiffs' final claim is that the trial court erred when it refused to give SJI2d 30.02 as plaintiffs requested. Again, it must be noted that plaintiffs, as they did in the previous issue, have not only framed their issue prospectively, but also plaintiffs have argued that this Court should give them prospective relief. For the reasons already stated, this issue is not properly before this Court.

Even if this Court considers plaintiffs' argument as if they are in fact alleging that the trial court erred by not giving SJI2d 30.02 per their request, plaintiffs do not now request reversal, therefore, this Court will not do so.

Affirmed.