RELLINGER v BREMMEYR

Docket No. 108569. Submitted July 18, 1989, at Grand Rapids. Decided October 17, 1989. Leave to appeal applied for.

Albert E. and Peggy E. Bremmeyr entered into a listing agreement with Petoskey Properties, Inc., with respect to a business property owned by the Bremmeyrs. On Saturday, December 20, 1986, E. Lawrence Rellinger, an independent real estate broker, submitted an offer on the property on behalf of Thomas Fanning who was representing a partnership which was yet to be formed. The Bremmeyrs rejected Fanning's offer but made a counteroffer. The counteroffer gave Rellinger three days to obtain Fanning's written acceptance of the counteroffer. On that same day, Rellinger contacted Fanning, secured his verbal consent to the counteroffer, and instructed Fanning to send a letter of acceptance. On Sunday, December 21, 1986, another realtor presented the Bremmeyrs with a new offer from Rodney Phillips. The Bremmeyrs were desirous of accepting the Phillips offer. Their realtor advised them that they could rescind their counteroffer to Fanning anytime prior to acceptance and prepared a rescission letter. The Phillips offer was accepted. The rescission letter was personally delivered to Rellinger's office on the morning of Monday, December 22, 1986, prior to Rellinger's receipt of Fanning's acceptance. The sale to Phillips was consummated on December 31, 1986. Rellinger commenced an action in Emmet Circuit Court, seeking from the Bremmeyrs the sales commission he would have been entitled to had the sale to Fanning gone through. The matter went to mediation, which resulted in a proposed award in favor of plaintiff in the amount of $9,000. Plaintiff accepted the mediation award, but defendants rejected the award. Defendants thereafter offered to stipulate to entry of judgment in plaintiff's favor in the amount of $5,000. Plaintiff rejected that offer but presented a counteroffer of $10,000, which defendants rejected. Following a bench trial, the trial court, Richard M. Pajtas, J., found in

REFERENCES

Am Jur 2d, Brokers §§ 57, 185, 186, 194, 230; Costs § 22.

See the Index to Annotations under Attorneys' Fees; Brokers; Costs and Expenses; Judgments, Orders, and Decrees; Stipulations.

favor of defendants and entered a judgment of no cause of action. The trial court awarded defendants their actual costs, including their attorney fees, pursuant to the costs provision of the court rule governing offers of entry of stipulated judgments. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff gave no consideration for defendant's promise to hold the counteroffer open for three days, since he neither paid for the right to keep the counteroffer open nor was there any course of dealings with defendants which would amount to consideration. Accordingly, defendant's unilateral offer granting plaintiff three days to secure Fanning's acceptance could, like the counteroffer, be revoked if revocation came before acceptance of the counteroffer.

2. A revocation of a broker's authority will only defeat the broker's right to a commission where the revocation was made in good faith and not as a mere device to avoid paying the commission. The trial court properly found that there were significant business reasons supporting defendants' decision to accept the Phillips offer and revoke the counteroffer to Fanning and that the revocation of plaintiff's authority was not done in bad faith.

3. Since the offer and counteroffer to stipulate to entry of judgment took place subsequent to the mediation process, costs were to be determined under the costs provision of the rule governing offers to stipulate to entry of judgment. Under that rule, plaintiff was liable to pay actual costs, including attorney fees, because the verdict of no cause for action was less than the average of the offer and counteroffer. While the trial court had the discretion to refuse to award attorney fees "in the interest of justice," the trial court did not abuse its discretion by granting costs and attorney fees.

Affirmed.

1. BROKERS — REAL ESTATE — COMMISSIONS.

    The general rule is that a broker is deemed to have earned his commission when the seller and the purchaser enter into a binding agreement.

2. BROKERS — REAL ESTATE — COMMISSIONS — TIME OF ACCEPTANCE — CONSIDERATION.

    A nonlisting real estate broker is not entitled to a commission where, although given three days to secure from a buyer acceptance of the seller's counteroffer, there was no consideration given by the broker to hold the counteroffer open for that period, the counteroffer was revoked by the seller before the

running of the three-day period but before acceptance of the counteroffer by the buyer and the revocation of the counteroffer was not undertaken by the seller in bad faith as a device to escape payment of commissions earned or about to be earned.

3. COSTS — COURT RULES — MEDIATION — STIPULATED JUDGMENTS.

Costs, where there has been both a rejection of a mediation award and a rejection of an offer to stipulate to entry of judgment, are controlled by the cost provisions of the court rule which governs whichever procedure occurred later in time (MCR 2.405[E]).

4. COSTS — COURT RULES — STIPULATED JUDGMENTS — ATTORNEY FEES — JUDICIAL DISCRETION.

A trial court, in the interest of justice, may in its discretion refuse to grant attorney fees as part of costs under the cost provisions of the court rule governing offers to stipulate to entry of judgment; however, actual costs, including attorney fees, should be routinely granted (MCR 2.405[D]).

*Marco, Litzenburger, Smith, Brown & Erhart, P.C.* (by *Seberon Litzenburger*), for plaintiff.

*Stroup, Mulhauser, Johnson & Tresidder, P.C.* (by *Charles W. Johnson*), for defendants.

Before: DANHOF, C.J., and CYNAR and WEAVER, JJ.

PER CURIAM. Plaintiff appeals as of right from a judgment of no cause of action following a bench trial in Emmet Circuit Court. We affirm.

Plaintiff's initial claim is that the trial court erred in concluding that plaintiff was not entitled to a commission under the purchase agreement for the sale of defendants' business property.

Defendants were the owners of business property located in Petoskey, Michigan. In September, 1986, defendants entered into a listing agreement with Petoskey Properties, Inc. Patricia McFall was named as the listing agent, however, the agreement provided that the property would be entered

on a multiple listing service. Plaintiff, a self-employed real estate broker, was not a member of the multiple listing service at that time.

Defendants received numerous offers from various individuals which were rejected outright or rejected by counteroffers. On Saturday, December 20, 1986, plaintiff submitted an offer on behalf of Thomas Fanning, representing a partnership to be formed, in the amount of $510,000. McFall immediately contacted defendants who rejected Fanning's offer but presented a counteroffer, requiring Fanning's consent to additional provisions. The counteroffer provided:

> RECEIPT IS ACKNOWLEDGED BY SELLER of a copy of this Agreement. "Seller gives Realtor/Broker above named *3* days to obtain written acceptance of this offer/counteroffer."

Plaintiff contacted Fanning later that evening by telephone and obtained Fanning's verbal consent to the additional terms. Plaintiff instructed Fanning to send a letter of acknowledgment.

On Sunday afternoon, December 21, 1986, another realtor presented a new offer to defendants from Rodney Phillips. Defendants were desirous of accepting Phillips' offer and were advised by McFall that they could rescind their outstanding counteroffer anytime prior to acceptance. McFall then prepared a letter that day rescinding the counteroffer to Fanning. Phillips' offer was thereafter accepted and the next morning, December 22, the rescission letter was personally delivered to plaintiff's secretary. Plaintiff thereafter received from Fanning the previously requested letter of acknowledgment, which was dated December 22, 1986. The sale of the property was ultimately consummated with Rodney Phillips on December 31, 1986.

On appeal, plaintiff argues that when defendants extended him a three-day period in which to secure acceptance of their counteroffer they could not legally revoke the counteroffer during this period and sell to another party so as to defeat his right to a commission. We disagree.

The findings of fact in a bench trial will not be set aside by an appellate court unless they are clearly erroneous. Appellate courts must give regard to the trial court's superior ability to judge the credibility of the witnesses who appeared before it. *Sumpter v Kosinski,* 165 Mich App 784, 804; 419 NW2d 463 (1988); *Kroll v Crest Plastics, Inc,* 142 Mich App 284, 288; 369 NW2d 487 (1985), lv den 423 Mich 859 (1985); MCR 2.613(C).

Initially, we note that it is important to distinguish between two related but separate matters, those being revocation of authority to secure acceptance and revocation of potential liability for a commission. These two matters are best explained in the following:

> Even though the owner's promise of a commission may have become irrevocable as an offer to the broker himself, the law of agency is such that the agent's power to bring the principal into contract relations with third persons can be terminated by the principal even though it is a breach of contractual duty to terminate it. Although not legally privileged to do this, the owner has power to do it. After being notified not to proceed with efforts to sell, the agent's power (in the absence of an estoppel) to bind his principal to a third person is destroyed. It does not necessarily follow from this that the agent's power to complete the acceptance of the owner's offer to himself is also terminated. The termination of the agent's power to bind his principal by a contract with a third person is an entirely different matter from the termination of the agent's power to bind his prin-

cipal to render a performance (commission) that the principal has promised to the agent. [1 Corbin on Contracts, § 50, p 208.]

Thus, although defendants may have had the power to revoke plaintiff's authority to secure a binding purchase agreement, such power does not necessarily absolve them from their separate contractual liability to pay a commission. In the absence of a special agreement, the general rule is that a broker is deemed to have earned his commission when the seller and the purchaser enter into a binding agreement. *Rich v Emerson-Dumont Distributing Corp,* 55 Mich App 142; 222 NW2d 65 (1974), lv den 393 Mich 766 (1974).

In rendering its decision, the trial court relied on the case of *Seelye v Broad,* 379 Mich 289; 150 NW2d 785 (1967). In *Seelye,* plaintiff-realtor was granted a one-day written authorization to sell property upon terms provided by the owners. Prior to expiration of the one-day period and prior to securance of an acceptance, the owners sold the property to another purchaser and notified plaintiff of such fact. Plaintiff later obtained a timely acceptance of the owners' prior offer upon the owners' terms. When the owners denied liability for any commission, plaintiff filed suit challenging the owners' right to terminate their written authorization during the extended period. The *Seelye* Court ultimately found that the plaintiff was entitled to a commission, finding that the plaintiff had furnished consideration for the owners' promise and therefore came within the exception to the general rule that the principal could revoke the offer without liability for a commission. In finding the presence of consideration, the Court looked to references in the agreement reciting that plaintiff had assisted in the preparation of the agreement

and also agreed to present the agreement to the intended purchaser.

In this case, the record does not indicate that plaintiff promised to make any specific efforts to sell the property or otherwise furnished any consideration in exchange for defendants' promise to pay a commission upon securance of an acceptance of the counteroffer. Plaintiff did not have a listing agreement with defendants, nor was there any personal contact between the parties. Plaintiff was not acting pursuant to an exclusive listing agreement, but instead was merely one of numerous other realtors soliciting offers on behalf of defendants.

Language in the purchase agreement with respect to the relationship between plaintiff and defendants provided that seller would pay to realtor/broker a commission equal to a certain percentage of the sale price for negotiating the sale. Because the counteroffer was withdrawn prior to acceptance, no sale was ever negotiated. The trial court found that, unlike the *Seelye* case, the agreement does not recite that plaintiff furnished any consideration in exchange for defendants' promise. Further, the agreement does not impose any duties or obligations upon plaintiff to present the offer to the intended purchaser or to exert any other specific efforts related thereto. The testimony also indicated that the three-day period to obtain acceptance was not bargained for by plaintiff, but was instead an arbitrary figure arrived at between the listing realtor and defendants.

The agreement appears to reflect nothing more than a unilateral offer granting plaintiff three days to secure acceptance. Such an offer would become binding only upon plaintiff's performance of a task of securing a written acceptance upon the terms provided by defendants. This event did

not occur prior to revocation, and the counteroffer was therefore properly revokable.

Having resolved the first part of the issue, the inquiry then becomes whether defendants acted in good faith. In order that a revocation of a broker's authority may defeat his right to commissions or other compensation it must be made in good faith and not as a mere device to appropriate the benefit of his service and efforts and at the same time escape the payment of commissions earned or about to be earned. *Schostak v First Liquidating Corp*, 320 Mich 406, 415-416; 31 NW2d 673 (1948). The trial court found that the evidence did not support a finding of bad faith, and a review of the record indicates such a conclusion was not clearly erroneous.

Although defendants were able to obtain an additional $16,000 by not having to pay a commission to plaintiff, testimony reflected that this was not a motivating factor in their decision to revoke the counteroffer to Fanning. Defendants testified that it was their understanding that, because of changes in the tax laws, savings of approximately $100,000 could be realized if they closed prior to January 1, 1987. Defendants were uneasy about the fact that Fanning's offer was made for a partnership to be formed. Defendants indicated that Phillips was an established person in the community and they were more familiar with him and felt much more confident that he would be able to close by the end of the year. Finally, plaintiff himself stated that he did not believe defendants' actions were the result of any bad motives against him. From this testimony, the trial court's conclusion that defendants' revocation of their counteroffer was not made in bad faith and with an intent to deprive plaintiff of a commission was not clearly erroneous.

Plaintiff next claims that the trial court erred by awarding defendants actual costs pursuant to MCR 2.405(E). We disagree.

After the case was submitted to mediation, a proposed mediation award was returned in the amount of $9,000 in favor of plaintiff. Plaintiff accepted the proposed award but defendants rejected it. Subsequently, defendants offered to stipulate to entry of judgment in the amount of $5,000. Plaintiff rejected but presented a counteroffer of $10,000, which was ultimately rejected by defendants. Following trial and the verdict of no cause of action in favor of defendants, defendants were awarded costs and attorney fees.

MCR 2.405(E), governing offers to stipulate to entry of judgment, provides:

> Relationship to Mediation. In an action in which there has been both the rejection of a mediation award pursuant to MCR 2.403 and a rejection of an offer under this rule, the cost provisions of the rule under which the later rejection occurred control.

Application of this rule does not require that a rejection of a mediation award and an offer to stipulate be made by the same party. See *Anderson v Howley,* 171 Mich App 210; 429 NW2d 646 (1988); *Coy v Richard's Industries, Inc,* 170 Mich App 665; 428 NW2d 734 (1988), lv den 432 Mich 856 (1989). Because plaintiff's rejection of the offer to stipulate occurred after defendant's rejection of the mediation award, the cost provision of MCR 2.405 controls.

MCR 2.405(D) provides in relevant part:

> Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:

\* \* \*

(2) If the adjusted verdict is more favorable to the offeree than the average offer, the offeror must pay to the offeree the offeree's actual costs incurred in the prosecution or defense of the action.

Here, the verdict of no cause of action was more favorable to defendants than the average offer of $7,500. Although MCR 2.405 may be applicable, an award of actual costs under the rule is nonetheless discretionary, and the court may refuse to award attorney fees "in the interest of justice." MCR 2.405(D)(3), *Sanders v Monical Machinery Co,* 163 Mich App 689, 692; 415 NW2d 276 (1987). Plaintiff claims that the trial court should have refused to award attorney fees "in the interest of justice" because the mediation process would be rendered meaningless if a claimant who has reluctantly decided to accept a "compromise mediation award" could be forced to further compromise their claim through a lesser offer to stipulate. We disagree. If a party is dissatisfied with a presented offer, the court rule allows that party to respond with a counteroffer.

Thus, because an award of actual costs under this rule should be routinely enforced and attorney fees granted, *Sanders, supra* at 692, and because plaintiff has not shown how the interest of justice would be defeated by enforcement of the court rule, it cannot be said that the trial court abused its discretion in awarding costs and attorney fees.

Plaintiff's final claim is that the trial court erred by permitting an expert witness to testify to the meaning of "clear and unambiguous" language in the purchase agreement. We consider plaintiff's

argument abandoned on appeal because it is not supported by citation of authority. *Tringali v Lal,* 164 Mich App 299, 306; 416 NW2d 117 (1987).

Affirmed.