BROOKS v ROSE

Docket Nos. 115963, 116745. Submitted January 22, 1991, at Detroit. Decided October 21, 1991, at 9:20 A.M.

Marvin Brooks and Sanford Layne brought an action in the Oakland Circuit Court against David and Sydney Rose, seeking a declaration of rights with respect to a letter of understanding concerning the formation of a partnership between the plaintiffs and Sydney Rose. The defendants filed a counterclaim, claiming breach of the partnership agreement and seeking damages arising out of that breach. Following a bench trial, the court, David F. Breck, J., determined that the letter of understanding created a partnership for the purpose of purchasing and developing a particular piece of property, that the action of the plaintiffs in terminating that business relationship and proceeding to try to buy and develop the property alone constituted a breach of the partnership agreement, and that the attorney fees expended by the defendants to protect Sydney Rose's right to purchase the land in question were damages that could be recovered by the defendants. The defendants appealed, claiming that the award of damages also should have included the "assembly fee" described in the partnership agreement, the difference between the original purchase offer and the price they eventually paid for the property, and exemplary damages. The plaintiffs cross appealed, claiming that damages are not recoverable in an action involving dissolution of a partnership and, in the alternative, that attorney fees involved in protecting a partnership right are not damages that can be recovered in an action for breach of the partnership agreement.

The Court of Appeals *held:*

The trial court properly found that there was a partnership agreement, that the agreement was breached, that the defendants could recover those damages that arose out of that breach, and that the defendants had failed to establish that they were entitled to the assembly fee, had suffered any financial harm when they eventually purchased the property, or had a right to recover exemplary damages. However, the court erred in holding that the attorney fees expended by the defendants to protect their interest in the property were recoverable as damages.

1. The partnership agreement clearly made the payment of

the assembly fee contingent on consummation of the purchase of the property and specifically provided that the plaintiffs were relieved from paying that fee if the purchase was not consummated for any reason. Because the defendants failed to show that the plaintiffs breached the partnership agreement in bad faith for the purpose of avoiding the payment of the fee, the court properly held that the defendants were not entitled to recover the fee as damages.

2. The court did not clearly err in concluding that the defendants were not financially harmed even though they paid a higher price for the property than the original purchase price the partnership would have paid.

3. The attorney fees expended by the defendants in protecting their right to purchase the property are not a proper element of damages for breach of the partnership agreement.

Affirmed in part and reversed in part.

*Bruce O. Wilson* and *Kerney & Heldt* (by *Jeffrey A. Heldt*), for the plaintiffs and counterdefendants.

*Dykema Gossett* (by *Craig L. John*), for the defendants and counterplaintiffs.

Before: GRIFFIN, P.J., and REILLY and T.M. BURNS,* JJ.

PER CURIAM. Following a bench trial, defendants, David Rose and Sydney Rose, were awarded $13,998.73 on their countercomplaint against plaintiffs, Marvin Brooks and Sanford Layne. Defendants appeal as of right, claiming they were entitled to additional damages. Plaintiffs cross appeal, claiming that defendants were improperly awarded attorney fees as an element of damages. We affirm in part and reverse in part.

I

In June 1983, David Rose met with Sanford

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Layne regarding the proposed development of a shopping center and office building complex on property in Kentwood, Michigan. Rose presented Layne with various informational materials that he had compiled regarding the feasibility of such a project and advised Layne that the real estate could be purchased at a favorable price. On August 15, 1983, Layne, along with his business associate, David Brooks, and Sydney Rose, who was David Rose's wife, executed a "letter of understanding" outlining the basis for a partnership to develop and manage a shopping and office complex on the Kentwood property. Pursuant to this letter, Brooks, Layne, and Sydney Rose agreed to form a partnership in which Brooks and Layne would each have a twenty-five percent interest and Sydney Rose a fifty percent interest. Brooks and Layne were to purchase the Kentwood property and serve as general contractors for the project. Sydney Rose was to receive a $125,000 "assembly fee," payable in three installments on the occurrence of certain contingencies.[1] Further, Syndey Rose was given the exclusive right to serve as leasing agent for the retail space for a period of one hundred days commencing on the date an offer to purchase was accepted. If, after one hundred days, the retail space was not leased in a reasonable manner satisfactory to Brooks and Layne, then Brooks and Layne had the option of obtaining an outside broker to handle the remaining leasing, subject, however, to Rose's right to approve the compensation for the broker. Each of the three partners, along with David Rose, also executed a separate agreement in which it was speci-

---

[1] $15,000 upon acceptance of an offer to purchase; $10,000 upon satisfaction to Brooks and Layne that the soil and engineering tests were acceptable for construction and upon approval by the City of Kentwood of a site plan; and $100,000 upon receipt of the first construction draw.

fied that David Rose was to perform all the obligations required to be performed by Sydney Rose pursuant to the terms of the letter of understanding.

In accordance with the letter of understanding, an offer to purchase the subject property for $1,300,000 was submitted by Brooks and Layne, in their individual names, and accepted by the seller on September 29, 1983. David Rose then began pursuing lessees for the proposed project. However, when the period of Sydney Rose's exclusive leasing rights ended on January 7, 1984, not a single tenant had been attracted. Consequently, on January 9, 1984, without the Roses' knowledge, Brooks and Layne met with real estate agents William Lakritz and Sanford Weber and made a verbal commitment to give them a thirty-five percent equity interest in the partnership in return for their services in locating tenants. Brooks and Layne then met with David Rose on January 11, 1984, informing him that they wanted Lakritz and Weber included in the partnership on a thirty-five percent equity basis, with twenty percent coming from Sydney Rose's interest. Rose insisted that any equity percentage come equally from the two sides. Brooks and Layne refused, and the parties were unable to resolve the issue regarding compensation.

As a result, on January 13 and 16, 1984, Brooks and Layne sent telegrams to the Roses, informing them that they were terminating their business relationship.[2] The Roses responded with a telegram of their own on January 17, announcing that they were willing to consider alternative arrangements for the compensation of the leasing agents,

[2] The January 16 telegram was the same as that sent on January 13, with the exception that it added certain language inadvertently omitted from the earlier telegram.

but were not willing to change control of the partnership. Brooks and Layne then advised the Roses that they were going to proceed with the development of the property without them and, on January 19, 1983, executed an amendment to the purchase agreement without the Roses' knowledge or consent. The amendment extended the closing date for the purchase of the Kentwood property from February 11 to May 25, 1984, removed certain contingencies, and changed the refundable $75,000 deposit to a $50,000 nonrefundable one.

On February 14, 1984, Brooks and Layne commenced a declaratory judgment action, seeking a declaration that Sydney Rose was no longer a partner, as well as the court's guidance with respect to the rights of the parties. The Roses countersued for damages, claiming that Brooks and Layne wrongfully breached the partnership agreement.

As it turned out, Brooks and Layne did not consummate the purchase of the Kentwood property, and they lost their $50,000 deposit. The Roses, however, were able to form a new partnership, which successfully purchased the Kentwood property on December 13, 1984, for $1,350,000 dollars.

Following a bench trial in December 1988, the trial court determined that a valid partnership consisting of Brooks, Layne and Sydney Rose arose pursuant to the parties' actions and undertakings in accordance with the duties and obligations set forth in the August 15, 1983, letter of understanding. The trial court found that the sole asset of the partnership was the right to purchase the Kentwood property pursuant to the September 29, 1983, purchase agreement. The trial court further found that Brooks and Layne, before amending the purchase agreement to the exclusion of Sydney

Rose, advised David Rose that they were going to proceed with the development of the Kentwood property without Sydney Rose, that they did not care what the Roses decided to do, and that if the Roses did not like what was happening, they could sue. The trial court determined that, through these actions, Brooks and Layne breached their fiduciary duty owed to Sydney Rose as a partner and improperly terminated the partnership. The trial court awarded the Roses damages in the amount of $37,081.25 for expenses incurred in protecting Sydney Rose's opportunity to purchase the Kentwood property.[3] This appeal followed.

II

The findings of fact in a bench trial will not be set aside by an appellate court unless they are clearly erroneous. MCR 2.613(C); *Rellinger v Brem-meyr,* 180 Mich App 661, 665; 448 NW2d 49 (1989). Appellate courts must give regard to the trial court's superior ability to judge the credibility of the witnesses who appeared before it. *Id.*

The plaintiffs contest the trial court's award of damages, claiming that damages are not recoverable in an action involving termination of a partnership. We find no merit to this claim.

The trial court found, and we agree, that the plaintiffs caused a dissolution of the partnership in contravention of the agreement between the partners. MCL 449.31(2); MSA 20.31(2). MCL 449.38(2)(a)(II); MSA 20.38(2)(a)(II), explicitly provides that when dissolution is caused in contravention of the partnership agreement, each partner who has not

---

[3] The trial court determined that Brooks and Layne were entitled to a return of $15,000, representing that portion of the assembly fee previously paid to Sydney Rose, and to reimbursement of $8,082.52 for Syndey Rose's share of the unpaid partnership expenses. This explains the net judgment amount of $13,998.73 in favor of the Roses.

wrongfully caused dissolution has a right to damages for breach of the agreement against each partner who wrongfully caused the dissolution. Also see *Gilroy v Conway,* 151 Mich App 628, 637; 391 NW2d 419 (1986).

III

We now turn to consideration of the defendants' issues on appeal. First, defendants claim that the trial court erred when it found that Sydney Rose was not entitled to the $125,000 assembly fee. We disagree.

Defendants do not dispute the trial court's finding that Sydney Rose's entitlement to the $125,000 assembly fee was controlled by the terms of the letter of understanding. Although the assembly fee was to be paid in three installments, the plaintiffs' ultimate liability to pay the fee was conditioned upon their consummation of the purchase of the Kentwood property. Pursuant to the letter of understanding, if the plaintiffs failed to consummate the purchase "for any reason," they would be relieved of their liability to pay Sydney Rose the assembly fee, and those fee installments previously paid would have to be returned to the plaintiffs.

Here, the trial court announced it was not awarding Sydney Rose the assembly fee because she failed to prove by a preponderance of the evidence that the plaintiffs' wrongful conduct prevented her from "earning" the fee and because she failed to show any attempt to mitigate her damages by negotiating the same provisions in the second partnership agreement.

With regard to the trial court's finding relative to mitigation, it appears that the trial court erred in placing the burden of proving mitigation on Sydney Rose. Instead, the burden was on the

plaintiffs, who were counterdefendants with respect to the claim involving the assembly fee, to prove that Sydney Rose failed to use reasonable efforts to mitigate her damages. *McCullagh v Goodyear Tire & Rubber Co,* 342 Mich 244, 255; 69 NW2d 731 (1955). Nevertheless, the error does not warrant reversal.

As noted above, consummation of the purchase of the Kentwood property by plaintiffs was a condition precedent to Sydney Rose's entitlement to the assembly fee, the failure of which, for any reason, would relieve plaintiffs from having to pay the fee. It is undisputed that this condition never occurred. Thus, the issue becomes whether the plaintiffs would have consummated the purchase but for the breach. The trial court found that such a showing had not been made.

The testimony at trial showed that the reason the plaintiffs did not consummate the purchase of the property was because of their concern over the tenant situation. It was this same situation, however, that sparked the disharmony between the parties in the first instance. While the plaintiffs' conduct in reaction to the situation may have been wrongful, they believed it was necessary if there was any chance to save the project. As things turned out, the wrongful conduct did not save the project. Given this situation, we are left with no reason to conclude that the end result, absent the breach, would have been any different.

Moreover, the record does not suggest, nor did the trial court find, that the plaintiffs' failure to consummate the purchase was due to a bad faith intention on their part to deny Sydney Rose her right to the assembly fee. We disagree with the defendants that bad faith was evidenced by the plaintiffs' removal of the contingencies from the purchase agreement. While some of the contingen-

cies did dictate when the second assembly fee installment (of $10,000) was to be paid, the fact remains that the installment, had it been paid, would have been required to be returned to the plaintiffs if the purchase was not consummated. Indeed, we believe that the plaintiffs' amendment of the purchase agreement in order to extend the closing date, albeit without consulting Sydney Rose, is reflective of their continuing desire to effectuate a consummation of the purchase rather than a bad faith intention to deny Sydney Rose her right to the assembly fee.

Accordingly, we are unable to say that the trial court clearly erred in finding that Sydney Rose failed to prove that she would have "earned" the assembly fee absent the plaintiffs' breach.

Next, defendants claim they were entitled to damages in the amount of $50,000 for the difference between the price they paid for the Kentwood property and the original purchase price that had been accepted.

The trial court determined that had the Kentwood property been successfully purchased for $1,300,000 in February 1984, the interest paid on the land contract from February to December of 1984 would have approached $100,000. Accordingly, it found that the defendants, by paying only $50,000 more in December, were not damaged.

Defendants argue that the trial court's finding was erroneous because there was no evidence of the amount of interest that would have been paid. We disagree. The land contract was admitted into evidence, and the amount of interest that would have been paid could be readily ascertained by reference to the terms of the contract. In any event, we note that there was testimony at trial indicating that the additional $50,000 was in fact the amount the seller was willing to take in order

to make up for the interest that would have been paid to the seller had the purchase been consummated earlier. Finally, although not specifically discussed by the trial court, we also note that in order for the defendants to establish that they were damaged by having to pay an increased purchase price, they would again have to show that the purchase of the property at the original price of $1,300,000 would have been consummated. As we noted in our discussion of the preceding issue, we believe the trial court correctly held that such a showing was not made. Accordingly, for the foregoing reasons, we conclude that the trial court did not clearly err in finding that defendants were not entitled to the $50,000 difference in price.

The next issue concerns the trial court's award of $37,081.25 to defendants for "expenses" incurred from January 19, 1984, when the plaintiffs amended the purchase agreement, until December 13, 1984, when they successfully purchased the Kentwood property. The parties do not dispute that the "expenses" referred to in the trial court's judgment were actually attorney fees incurred by defendants.

Plaintiffs argue that the award was improper because attorney fees are not recoverable as an element of damages. Although the specific services for which the attorney fees were incurred are not identified, defendants argue that the attorney fees were properly awarded as a necessary expense in protecting their interest in the Kentwood property. Additionally, defendants claim they are entitled to a similar award for the period December 13, 1984, to July 20, 1987, when, according to defendants, plaintiffs finally stopped asserting an interest in the Kentwood property.

Michigan adheres to the general rule that attor-

ney fees are not recoverable, either as an element of costs or as an item of damages, unless expressly authorized by statute, court rule, or a recognized exception. *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 74; 212 NW2d 821 (1973). Exceptions to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed. *Scott v Hurd-Corrigan Moving & Storage Co, Inc,* 103 Mich App 322, 347; 302 NW2d 867 (1981).

Recovery has been allowed in limited situations where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct. See *Oppenhuizen v Wennersten,* 2 Mich App 288; 139 NW2d 765 (1966) (fraud); *Tutton v Olsen & Ebann,* 251 Mich 642, 650; 232 NW 399 (1930) (malicious prosecution); *Bates v Kitchel,* 166 Mich 695; 132 NW 459 (1911) (false imprisonment). Recovery has also been permitted where a defendant's wrongful conduct has forced a party to incur legal expenses in prior litigation with a third party. *State Farm v Allen, supra* at 78.

The present case involves attorney fees arising from the breach of a partnership contract. The facts do not support an award of attorney fees under any of the recognized exceptions to the general rule that such fees are not recoverable. Therefore, we reverse and vacate that portion of the trial court's judgment awarding defendants $37,081.25 for attorney fees.

Finally, defendants argue that the trial court erroneously failed to award them exemplary damages. We disagree. As this Court explained in *Gilroy, supra* at 636-638, exemplary damages are not recoverable for breach of a partnership contract or the duties stemming therefrom.

Affirmed in part and reversed in part.