*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL OUTDOOR, INC,

        Plaintiff-Appellant/Cross-Appellee,

v

SS MITX, LLC, d/b/a SIMPLY SELF STORAGE,

        Defendant-Appellee,

and

LAMAR ADVERTISING OF MICHIGAN, INC,

        Defendant-Appellee/Cross-Appellant.

FOR PUBLICATION
December 7, 2023
9:00 a.m.

No. 359082
Oakland Circuit Court
LC No. 2016-155472-CB

---

LAMAR ADVERTISING OF MICHIGAN, INC,

        Plaintiff-Appellee,

and

SS MITX, LLC, d/b/a SIMPLY SELF STORAGE,

        Plaintiff,

v

INTERNATIONAL OUTDOOR, INC,

        Defendant-Appellant.

No. 359811
Oakland Circuit Court
LC No. 2016-155489-CB

---

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

GADOLA, P.J.

In Docket No. 359082, plaintiff, International Outdoor, Inc. (International), appeals by right the trial court's order entering judgment in favor of defendants, SS MITX, LLC, doing business as Simply Self Storage (Simply Storage), and Lamar Advertising of Michigan, Inc. (Lamar) after a jury trial. Lamar cross-appeals the same order challenging the trial court's denial of its claim for attorney fees. In Docket No. 359811, defendant International appeals by right the trial court's award of costs to plaintiff Lamar. We affirm the trial court's order entering judgment in favor of Simply Storage and Lamar, vacate the trial court's order denying Lamar's request for attorney fees, vacate in part the trial court's order for costs, and remand to the trial court for further proceedings.

I. FACTS

This appeal arises from a contract dispute. Simply Storage operates a self-storage business near I-75 in Auburn Hills. In March 2009, Simply Storage leased to International the exclusive right to erect a billboard on its property. The lease had a five-year term and could be renewed for additional terms of five years. International did not erect a billboard on the property, and in December 2015, after the five-year term of the lease had concluded, Simply Storage leased the right to erect a billboard on the property to Lamar.

International filed suit against Simply Storage and Lamar, contending that International renewed its exclusive lease with Simply Storage in 2013, that Simply Storage breached the renewed lease by thereafter contracting with Lamar, and that Lamar tortiously interfered with International's contract with Simply Storage. Simply Storage denied that the lease with International had been renewed. Simply Storage and Lamar then sued International, alleging that International failed to perform on its lease with Simply Storage and thereafter tortiously interfered with Simply Storage's lease with Lamar. The trial court consolidated the two cases.

The parties moved for summary disposition under MCR 2.116(C)(10). International supported its motion with a letter dated December 20, 2013, signed by International's president, Latif Z. Oram, purporting to renew the lease. Oram asserted that he sent the letter to Simply Storage in December 2013. Simply Storage presented evidence that it never received the renewal letter. The trial court denied the parties' motions on the basis that a question of fact existed whether International timely renewed the lease.

At trial, Oram testified that he drafted and sent the renewal letter to Simply Storage in December 2013. Oram admitted that, contrary to a statement in the letter, he did not include a check for payment, explaining that it was a form letter. When asked why International had not produced electronic records to demonstrate when the letter was created, Oram testified that he no longer owned the computer from 2013 and no longer had the relevant data on his computer's server due to a computer virus. The jury found in favor of International, awarding $405,000 in damages. The trial court entered judgment in favor of International.

Simply Storage and Lamar thereafter moved for relief from the judgment under MCR 2.612(C)(1)(c). They asserted that after trial they learned that Oram created the renewal letter in 2016 and intentionally backdated the letter to 2013 for the purpose of misrepresenting that International had timely renewed the lease. Simply Storage and Lamar supported their motion with the affidavit of Patrick Depa, a former International employee, in which Depa stated that in

July 2016, he saw Oram type and sign the renewal letter, backdating the letter to December 2013 for the purpose of supporting International's claim that it timely renewed the lease.

The trial court held a hearing on the motion, at the conclusion of which the trial court ordered that International permit Simply Storage and Lamar to conduct a forensic analysis of International's computers related to Depa's assertion that the renewal letter was created in 2016 and International's assertion that their computer records of 2013 had been destroyed by a virus. The trial court thereafter held an evidentiary hearing, during which Depa testified that he had seen Oram create the renewal letter in 2016 and backdate the letter to 2013. In addition, the expert conducting the forensic analysis of International's computer testified that he could find no evidence on the computer of the renewal letter being created in 2013, and no evidence of a computer virus wiping out files created before February 2014 as asserted. International's own computer service provider testified that the reason the 2013 information was not apparent on the computer was because the one provided for analysis was not the one in use in 2013, but that information was not provided to the forensic examiner at the time of the forensic analysis. International's computer service provider also testified that the computer in use by International in 2013 was not replaced until 2019, contradicting Oram's assertion at trial in 2018 that the 2013 computer was not available at the time of the first trial.

The trial court thereafter issued an opinion in which it found Depa's testimony sufficiently credible to rebut Oram's testimony regarding the renewal letter. The trial court further found that International had made "flagrant misstatements" about the existence of its computer and had failed to fully disclose witnesses who had information about the case. The trial court entered an order setting aside the judgment and ordering a new trial.

At the conclusion of the second trial, the jury found in favor of Simply Storage and Lamar. The jury determined that International tortiously interfered with Lamar's contractual relationship with Simply Storage and awarded Lamar $687,244 in damages. The jury also found that Lamar was entitled to reasonable attorney fees as an element of damages. Lamar thereafter sought $844,011.40 in attorney fees and submitted a bill of costs seeking $40,237.86 in costs. The trial court determined that Lamar was not entitled to its attorney fees as an element of damages, but entered an order granting Lamar's request for costs. The trial court denied International's motion for judgment notwithstanding the verdict. These appeals followed and were consolidated by this Court.

## II. DISCUSSION

### A. MOTION FOR RELIEF FROM JUDGMENT

International contends that the trial court abused its discretion by granting Simply Storage's and Lamar's motion for relief from judgment after the first jury trial because (1) Depa's assertions could have been discovered by reasonable diligence before the first trial, (2) Depa's assertions were not credible, and (3) the trial court made errors at the evidentiary hearing that warrant reversal. We disagree.

We review a trial court's decision to grant or deny a motion for relief from judgment for an abuse of discretion, which occurs when the trial court's decision falls outside the range of

principled outcomes. *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). A trial court also abuses discretion when it premises its exercise of discretion on an error of law. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). We review de novo the trial court's interpretation and application of the court rules and the rules of evidence. *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 6.

## 1. DUE DILIGENCE

International first contends that the trial court abused its discretion by granting the motion for relief from judgment after the first jury trial because Simply Storage and Lamar could have discovered Depa's assertions by due diligence before the first trial. We disagree that defendants were obligated to demonstrate due diligence.

MCR 2.612(C) sets forth the bases under which a party may move for relief from judgment. MCR 2.612(C)(1) provides:

**(C) Grounds for Relief from Judgment.**

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

MCR 2.612(C)(1)(b) (newly discovered evidence) and (C)(1)(c) (fraud) provide distinct grounds for relief from a judgment. Under MCR 2.612(C)(1)(b), newly discovered evidence is not sufficient to grant relief from a judgment unless it could not have been discovered through due diligence in time to move for a new trial under MCR 2.611(B). A party seeking relief from judgment based on newly discovered evidence must establish that (1) the evidence, not simply its materiality, is newly discovered, (2) the evidence is not merely cumulative, (3) the newly discovered evidence is likely to change the result, and (4) the party moving for relief from judgment was not able to produce the evidence with reasonable diligence. *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655; 625 NW2d 40 (2000). By contrast, MCR

-4-

2.612(C)(1)(c) does not impose a due diligence requirement on the party seeking relief from judgment on the basis of fraud, misrepresentation, or the misconduct of an adverse party.

Additionally, MCR 2.612(C)(1)(f) permits the trial court to grant relief from judgment for "any reason justifying relief." Generally, relief is granted under MCR 2.116(C)(1)(f) when the reason for setting aside the judgment is not included in (C)(1)(a)-(e), and when the judgment was obtained by the improper conduct of the party in whose favor the judgment was entered. *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999). However, a trial court is justified in granting relief under MCR 2.116(C)(1)(f) "even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand." *Id*. at 481.

Relatedly, the bases for granting a new trial are set forth in MCR 2.611, which provides, in relevant part:

> **(A) Grounds.**
>
> (1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:
>
> * * *
>
> (b) Misconduct of the jury or of the prevailing party.
>
> * * *
>
> (f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.
>
> * * *
>
> (h) A ground listed in MCR 2.612 warranting a new trial.
>
> * * *
>
> **(B) Time for Motion.** A motion for a new trial made under this rule or a motion to alter or amend a judgment must be filed and served within 21 days after entry of the judgment.

In this case, defendants moved for relief from judgment under MCR 2.612(C)(1)(c) asserting that Oram fraudulently represented that the letter purporting to renew the lease had been sent to Simply Storage in December 2013. Defendants offered Depa's affidavit as proof that Oram created the letter in July 2016, but backdated the letter to 2013 for the purpose of misrepresenting that International had renewed the lease three years earlier.

International contends that under MCR 2.612(C), defendants were required to establish that Depa's averments constituted newly discovered evidence that they could not have discovered

-5-

with reasonable diligence before the first trial. In support of this theory, International directs this Court's attention to *Stallworth v Hazel*, 167 Mich App 345; 421 NW2d 685 (1988).[1] In *Stallworth*, the plaintiff sued the defendant to establish that the defendant was the father of her child. A jury found that the defendant was not the child's father. *Id*. at 349. The plaintiff moved for a new trial and for relief from judgment, alleging in part that the defendant perjured himself when he denied that he had written the date on a letter that had been at issue during the trial. In support of her motion, the plaintiff presented a report from a handwriting expert opining that the defendant had written the date that appeared on the letter. The trial court denied the motions, reasoning that the plaintiff could have obtained the handwriting analysis before the first trial. *Id*. at 349. This Court affirmed, stating in relevant part:

> Because plaintiff's allegation of perjury is dependent upon newly discovered evidence, we conclude that such perjury should warrant relief from judgment only if it could not have been discovered and rebutted at trial by the exercise of due diligence. Any other result would undermine MCR 2.611(A)(1)(f), which allows a new trial based on newly discovered evidence only when that evidence "could not with reasonable diligence have been discovered and produced at trial." [*Id*. at 356.]

We are unpersuaded that the reasoning of *Stallworth* supports International's argument that due diligence must be demonstrated for a moving party to obtain relief from judgment on the basis of fraud. In *Stallworth*, this Court recognized the historical distinction between intrinsic and extrinsic fraud, which was a procedural distinction; a court sitting in equity could not grant relief from a judgment entered in a different court if the claim involved intrinsic fraud; rather, only the original court could grant relief for intrinsic fraud. See *id*. at 355. That distinction is not relevant under MCR 2.612(C), which permits the trial court to grant relief from a judgment on the basis of fraud without regard to whether the fraud was intrinsic or extrinsic.

Moreover, *Stallworth* concluded that because the plaintiff's allegation of fraud was based upon the report of the handwriting expert, which could have been sought by the plaintiff earlier, the plaintiff had not demonstrated diligence sufficient to obtain relief from judgment. MCR 2.612(C)(1)(b) and (C)(1)(c), however, provide distinct grounds for relief from a judgment, distinguishing fraud, misrepresentation, and improper conduct by an adverse party as a basis for setting aside a judgment from the mere discovery of new evidence after trial. We observe that evidence of fraud typically is concealed from the moving party by the opposing party at the time of trial. Consequently, it will almost always be the case that whenever a party raises fraud, misrepresentation, or other misconduct of an adverse party as a basis to set aside a judgment, the evidence of that conduct is likely newly discovered by the moving party. Regardless of whether

---

[1] Because *Stallworth* was published before November 1, 1990, it is not strictly binding on this Court. See MCR 7.215(J)(1). It nevertheless "has precedential effect under the rule of stare decisis." MCR 7.215(C)(2); *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5 n 1. See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). Although this Court has applied *Stallworth* in unpublished opinions, those decisions are not binding on this Court. See MCR 7.215(C)(1)

it is newly discovered, however, evidence of fraud is given a distinct category under the court rule delineating it from evidence that is merely newly discovered. By grafting the due diligence requirement of newly discovered evidence relevant to MCR 2.612(C)(1)(b) onto the grounds stated under MCR 2.612(C)(1)(c), the Court in *Stallworth* interpreted the court rule in such a way as to remove fraud as an independent ground for relief from judgment under MCR 2.612(C)(1).

The Court in *Stallworth* reasoned that to not impose a due diligence requirement "would undermine MCR 2.611(A)(1)(f), which allows a new trial based on newly discovered evidence only when that evidence 'could not with reasonable diligence have been discovered and produced at trial.' " *Stallworth*, 167 Mich App at 356. But just as there is a distinction between the requirements of MCR 2.612(C)(1)(b) and (C)(1)(c), there is a distinction between the requirements of MCR 2.611(A)(1)(f) and (A)(1)(h). MCR 2.611(A) provides that the trial court may grant a new trial when the substantial rights of a party are materially affected for any of the reasons stated in that subsection. One of the reasons is stated in MCR 2.611(A)(f), which provides "[m]aterial evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial." A separate basis for granting a new trial is stated in MCR 2.611(A)(h), which states, "[a] ground listed in MCR 2.612 warranting a new trial." Fraud is a ground listed in MCR 2.612 justifying relief from a judgment, and thus falls into the category of MCR 2.611(A)(h), not MCR 2.611(A)(f). In sum, we hold that MCR 2.612(C)(1)(c) does not impose a requirement of due diligence upon a party seeking relief from judgment on the basis of fraud, misrepresentation, or other misconduct of an adverse party.

We observe, however, that although defendants were not required to show due diligence in discovering the fraud, the record in this case nonetheless amply supports the conclusion that Simply Storage and Lamar exercised diligence to ascertain the legitimacy of the renewal letter in the earlier litigation. During discovery, Lamar asked International to identify "any persons who provided information used in answering this First Discovery Set." International answered: "Randy Oram, President; Jeff Sieving, Corporate Counsel; and Patrick Depa, Director, Real Estate." When asked in the same set of requests, however, to identify all persons that "you believe may have information regarding the facts giving rise to the claims and defenses in this action," International did not list Depa. International also did not list Depa when asked to identify "any and all person(s) with information about the facts alleged in the complaint and/or the Defendant's denials of those facts." Read together, International's answers to the interrogatories can reasonably be understood as an assertion by International that Depa, although he may have assisted in some unstated way in preparing the discovery responses, had no relevant information concerning the substance of the dispute. Accordingly, International led Lamar to believe that it had no grounds to depose Depa despite International knowing that Depa had information about the provenance of the renewal letter.

International suggests that Simply Storage and Lamar could not reasonably rely on International's answers to the interrogatories and should have investigated further, implying that Lamar should have assumed that Depa had information notwithstanding International's assertion to the contrary. We disagree. The purpose of discovery is to simplify and clarify the issues to be tried. *Hamed v Wayne Co*, 271 Mich App 106, 109; 719 NW2d 612 (2006). International had a duty to make complete and correct disclosures, see MCR 2.302(G)(3)(a)(*i*), and we reject an interpretation of the court rules that requires a party to assume that his or her opponent has violated the rules of discovery. Simply Storage and Lamar were permitted to rely on International's

discovery responses and cannot be faulted for failing to depose Depa after International asserted that Depa had no information relevant to the claims or defenses at issue.[2] We conclude that although Simply Storage and Lamar were not required by MCR 2.612(C)(1)(c) to demonstrate diligence in discovering International's fraud, they did not fail to exercise diligence in attempting to ascertain the validity of the renewal letter.

## 2. DEPA'S CREDIBILITY

International also contends that the trial court abused its discretion by finding Depa's testimony credible when granting the motion for relief from judgment. We review for an abuse of discretion the trial court's decision to admit or exclude evidence. *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 153; 908 NW2d 319 (2017). We review the trial court's findings of fact for clear error, giving regard to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C); *Dep't of Environmental Quality v Sancrant*, 337 Mich App 696, 717; 976 NW2d 874 (2021).

International argues that there were inconsistencies and misrepresentations in Depa's affidavit that demonstrated that Depa was not credible. During the evidentiary hearing, International's lawyer cross-examined Depa about inconsistencies in his affidavit. For example, counsel questioned Depa about his assertion in the affidavit that, when searching for the renewal letter, the staff at International looked in every file. Depa agreed that the staff actually looked in every file pertinent to billboards, not necessarily every single file of every kind. Depa also agreed that during his deposition he conceded that it was possible that Oram replaced his computer without Depa's knowledge. In addition, Depa agreed that, contrary to his assertion in his affidavit that International forgot about the lease until 2016, the lease was mentioned occasionally during meetings, although no one took action on the lease. International's lawyer also elicited testimony from Depa casting doubt on his assertion that he informed Oram that the lease had expired, and testimony that Depa asked Oram to lie to a prospective employer.

Although International's lawyer effectively cross-examined Depa regarding the accuracy of Depa's recollections, the trial court correctly observed that the inaccuracies with which Depa was confronted did not undermine his testimony that he saw Oram draft and print the back-dated renewal letter in 2016. The trial court was in the best position to assess the weight and credibility of Depa's testimony at the evidentiary hearing. See MCR 2.613(C). In addition, International did not present evidence to support its assertion that all computer data surrounding the letter had been lost, lending support to Depa's testimony that the renewal letter had in fact been created in 2016 and that International deliberately deleted or destroyed evidence that would have established the letter's provenance. On this record, we have no basis to second guess the trial court's superior ability to assess Depa's credibility. See *Swain v Morse*, 332 Mich App 510, 524; 957 NW2d 396

---

[2] Similarly, Simply Storage and Lamar did not lack diligence for failing to make further discovery requests related to International's computers based upon International's assurances that the computer information was no longer available.

(2020) (The judicial system relies upon the fact-finders to determine the credibility of the evidence).

## 3. EVIDENTIARY CHALLENGES

### a. CHARACTER EVIDENCE

International contends that the trial court improperly admitted propensity evidence at the evidentiary hearing. Depa testified at the hearing that he observed Oram create the renewal letter in 2016 and backdate the letter to 2013, and that he also had observed Oram alter other documents in the past. He testified, in relevant part:

> *Q.* Had you ever had any experience with Mr. Oram doing anything of this nature before, altering the date on a document, or altering a document?
>
> *A.* Many, many times.
>
> *Q.* And what had you seen before?
>
> *A.* He would manipulate engineering plans. He would move stamps from other plans that were stamped and reviewed by engineers to engineering plans and building plans that weren't approved by engineers.
>
> He would also manipulate building code dates for building code—for plans that were designed—or engineered to a specific building code in the past, but now a new building code was adopted by the state that he would move—he would actually move that—or change that date from 2011, building code—Michigan BC—Michigan building code—to now 2015 Michigan building code, . . .

International's lawyer objected to the testimony as improper evidence of "other bad acts" subject to exclusion under MRE 404(b). Lamar's lawyer responded that the testimony was admissible under MRE 404(b) as evidence of Oram's system of altering dates on documents. The trial court overruled International's objection. We conclude that the trial court erroneously admitted Depa's testimony that Oram altered other documents in the past, but the error was harmless.

Generally, only relevant evidence is admissible. MRE 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence that is logically relevant under MRE 401 and 402, however, nonetheless may be excluded under a rule of legal relevance. In that regard, MRE 404 generally precludes the admission of character evidence to prove that the actor acted in conformity with that character despite its relevance. MRE 404 provides in pertinent part:

> **(a) Character Evidence Generally**. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, . . .

**(b) Other Crimes, Wrongs or Acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other acts evidence under MRE 404(b) is only admissible "when a party shows that it is (1) offered for a proper purpose, i.e., to prove something other than . . . propensity to act in a certain way, (2) logically relevant, and (3) not unfairly prejudicial under MRE 403." *Rock v Crocker*, 499 Mich 247, 257; 884 NW2d 227 (2016). In this case, the trial court erred by accepting other acts evidence without a "proper purpose," because Lamar's stated purpose was effectively propensity evidence. See MRE 404(b). The trial court also failed to offer a limiting instruction. See *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993). Nonetheless Depa's testimony regarding Oram's other acts of falsifying documents could have been properly admitted under MRE 404(b) for myriad other proper purposes. Most obviously it tends to show lack of accident or mistake related to Oram's explanations for International's inability to locate metadata related to the document at issue in this case. See MRE 404(b)(1). Moreover, improper admission of other-acts evidence "is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Denson*, 500 Mich 385, 409; 902 NW2d 306 (2017) (quotation marks and citation omitted). When reviewing the improper admission of other acts evidence, we must "focus on the nature of the error and assess its effect in light of the weight and strength of the untainted evidence." *Id.* at 409-410 (alterations, quotation marks, and citation omitted). Here, the inadmissible testimony was relatively minor compared to other high-confidence corroborating evidence of falsification of the documents at issue. Considering that the evidence could have been properly admitted on other grounds, and in light other high-confidence corroborating evidence, the error in this case was harmless.

## b. FAYCURRY'S TESTIMONY

International also contends that the trial court erred by preventing International from introducing evidence that Depa left a message with another employee, James Faycurry. Depa testified that no one at International had taken an interest in the lease with Simply Storage until about January or February 2016, which Depa recalled was about the time Faycurry started working with International, and that Faycurry renewed Oram's interest in the lease with Simply Storage at that time. By contrast, Faycurry testified at the evidentiary hearing that he began working for International in February 2017. International's lawyer attempted to introduce into evidence a voicemail message Depa purportedly left Faycurry in June 2019, wherein Depa attempted to confirm the date Faycurry began his employment with International and also made a derogatory remark about Oram. International argued that the voicemail message was offered to impeach Depa because Depa admitted on the voicemail that he was a contractor, not an employee, that Depa was

unsure of when Faycurry began his employment with International at the time he made his affidavit, and that the voicemail also showed Depa's animosity toward Oram. The trial court excluded the voicemail as hearsay.

Hearsay is a statement other than one made by the declarant while testifying at the hearing that is offered to prove the truth of the matter asserted, MRE 801(c), and is generally inadmissible. MRE 802. Evidence that Depa was biased against Oram generally would be admissible to attack Depa's credibility. However, International did not have to admit the voicemail message to establish the points that it wished to make. It could have cross-examined Depa about his animosity toward Oram and could have confronted him with the voicemail and other evidence if he denied it. International also had cross-examined Depa about his understanding of his employment status and suggested that Depa misrepresented himself as an employee. International also demonstrated that Depa's affidavit was incorrect about the start date of Faycurry's employment, without resort to the voicemail. On the record before the trial court, International did not lay a sufficient foundation to establish that the voicemail was admissible for a purpose other than to prove the truth of the matters asserted in the recording. We conclude that the trial court did not abuse its discretion by excluding the hearsay evidence.

## B. JUDGMENT NOTWITHSTANDING THE VERDICT

At the conclusion of the second trial, the jury found that International tortiously interfered with the contract between Simply Storage and Lamar. International contends that the trial court erred by denying International's motion for judgment notwithstanding the verdict because Simply Storage and Lamar failed to establish their claim of tortious interference with a contract. International argues that it could not interfere with defendants' contract because Simply Storage had no duty to perform under the lease until Lamar constructed a billboard on the Simply Storage property, which never occurred. We disagree.

We review de novo a trial court's decision to grant or deny a motion for judgment notwithstanding the verdict, *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586 , 604; 886 NW2d 135 (2016), viewing "the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004). If the evidence viewed in this light fails to establish a claim as a matter of law, the moving party is entitled to judgment notwithstanding the verdict. *Craig*, 471 Mich at 77. However, "if reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Hecht*, 499 Mich at 605-606.

The elements of tortious interference with a contract or contractual relations are "(1) the existence of a contract, (2) breach of the contract, and (3) an unjustified instigation of the breach by the defendant," resulting in damage to the aggrieved party to the contract. *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013). For purposes of tortious interference with a contract, the element of breach may be demonstrated by showing that "the defendant induced or otherwise caused nonperformance of the contract." *Hutton v Roberts*, 182 Mich App 153, 161; 451 NW2d 536 (1989); see also *Wilkinson v Powe*, 300 Mich 275, 285-286; 1 NW2d 539 (1942) (Tortious interference with a contract does not require actual breach of contract; the interference need only cause the termination of the contractual arrangement). With regard to the third element, the party alleging tortious interference with a contractual relationship

must allege the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law" for the purpose of invading the contractual rights of another. *Relative Time Films, LLC v Covenant House Michigan*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359645); slip op at 3 (quotation marks and citation omitted). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.*, quoting *Knight Enterprises*, 299 Mich App at 280.

In this case, the parties do not dispute that Simply Storage and Lamar entered into a lease agreement. The lease provides that Simply Storage leased to Lamar "as much of the hereinafter described lease premises as may be necessary for the construction, repair and relocation of an outdoor advertising structure," for a term of 20 years beginning on the date of the installation of the billboard. Lamar presented significant evidence that Oram's actions directly interfered with the lease between Lamar and Simply Storage and caused Lamar to lose the benefit of its bargain for a period of years; the evidence showed that, but for International's forged renewal letter, Simply Storage would have allowed Lamar onto its property to erect the billboard. International's actions therefore caused Simply Storage to "breach" its lease with Lamar, in that the interference induced the nonperformance of the contract.

International argues that the record established that Simply Storage did not breach any particular duty that it owed to Lamar because the 20-year lease period did not commence until Lamar installed a sign, and thus the agreement never began; that is, Simply Storage had no duty to perform because Lamar never installed a billboard, so the lease never commenced. International's argument does not reflect a plausible interpretation of the parties' agreement.

Simply Storage and Lamar agreed that Lamar was leasing the property "necessary for the construction" of the billboard, and that the term of the lease would be 20 years beginning from the date of the installation of the billboard. The fact that the parties agreed that the 20-year term would begin upon the construction of the billboard did not mean that the agreement did not become a valid and binding agreement as of the date of execution. The latter provision protected Lamar's right to use the property for its billboard for at least 20 years after the billboard's construction; it did not preclude the agreement from coming into force. Once Simply Storage executed the lease with Lamar, it would have been a breach of the agreement for Simply Storage to refuse Lamar reasonable entry to construct its billboard.

A reasonable jury considering the evidence could conclude that a contract existed between Simply Storage and Lamar, and that International's forged lease renewal, ostensibly demonstrating an exclusive right to erect a billboard on the property, interfered with the contract between Simply Storage and Lamar to permit Lamar to erect a billboard on the same property, inducing nonperformance of the contract. Because a reasonable jury could find that International unjustifiably induced the nonperformance of the contract between Simply Storage and Lamar, the trial court did not err when it denied International's motion for judgment notwithstanding the verdict. See *Hecht*, 499 Mich at 605-606.

## C. REMITTITUR

International also contends that the trial court abused its discretion by denying its motion for remittitur. We review the trial court's decision on a motion for remittitur for an abuse of

discretion, viewing the evidence in the light most favorable to the non-moving party. *Pungo v Blue Harvest Farms, LLC*, 326 Mich App 1, 30; 930 NW2d 393 (2018).

Remittitur is a reduction of the amount awarded by the jury's verdict. See *Anderson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017). When determining whether remittitur is warranted, the relevant inquiry is whether the jury's award falls within the range of the evidence presented at trial. *Id*. Remittitur is warranted when the jury's verdict exceeds the highest amount that the evidence supports. *Diamond v Witherspoon*, 265 Mich App 673, 694; 696 NW2d 770 (2005). The trial court's power to grant remittitur should be exercised with significant restraint. *Anderson*, 322 Mich App at 84. If the jury's award falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation, it should not be disturbed. *Id*.

At trial, Lamar presented evidence that it lost $687,244 in profits during the years it was prevented from installing its billboard on Simply Storage's property. That amount was based on testimony that Lamar's net monthly profits for the proposed billboard would have been $11,541 for 61 months (the delay caused by International's interference), reduced by $16,757 to account for reduced profits during the Covid shutdown. International argues that at trial, through cross-examination of Lamar's witness, International demonstrated that Lamar did not lose its profits altogether, but instead lost only the time value of the profits (the earnings on those profits) that it would have made during that period but for International's interference. International argues that Lamar still has the opportunity to earn profits for the entire 20-year lease because after the delay of 61 months caused by International's interference, Lamar still had a 20-year lease, albeit pushed further into the future, and that Lamar did not establish that it would have taken advantage of the lease renewal options.

International's assessment of the evidence does not establish grounds for remittitur. Lamar presented evidence of the profits it would have obtained; International argued that Lamar lost only the earnings on those profits during that period. The jury evidently found Lamar's evidence persuasive; indeed, International's argument does not account for Lamar not having access to those earnings during the years in question. That is, International did not merely delay Lamar in earning the interest on the profits in question, it deprived Lamar of access to those profits during that period for whatever purpose Lamar may have wanted or needed those funds. Moreover, International did not establish that the opportunity to embark on the 20-year lease several years later is necessarily the same opportunity that existed had the lease commenced according to Lamar's and Simply Storage's agreement.

In sum, International presented its theory to the jury but did not succeed in refuting Lamar's evidence. As discussed, remittitur is warranted only when the jury's verdict exceeds the highest amount that the evidence supports, *Diamond*, 265 Mich App at 694, and thus, the relevant inquiry is whether the jury's award falls within the range of the evidence presented at trial. *Anderson*, 322 Mich App at 84. A reasonable jury could find that Lamar lost the benefit of profits during the period in question as a result of International's tortious interference. Viewing the evidence in the light most favorable to Lamar, there was evidence to support the jury's award of damages. The trial court therefore did not abuse its discretion by denying International's motion for remittitur.

D. ATTORNEY FEES

On cross-appeal, Lamar argues that the trial court erred by determining that Lamar was not entitled to its reasonable attorney fees as an element of damages. We review for an abuse of discretion a trial court's award of attorney fees and costs; questions of law pertaining to an award of attorney fees are reviewed de novo. *Highfield Beach at Lake Michigan v Sanderson*, 331 Mich App 636, 655; 954 NW2d 231 (2020).

Michigan follows the "American Rule" that provides that the prevailing party in litigation is not entitled to recover its attorney fees as an element of damages unless expressly allowed by statute, court rule, common law exception, or by the parties' contract. *Skaates v Kayser*, 333 Mich App 61, 84; 959 NW2d 33 (2020). Exceptions to this general rule are narrowly construed. *Brooks v Rose*, 191 Mich App 565, 575; 478 NW2d 731 (1992).

Michigan law allows a plaintiff to recover its attorney fees as an element of damages under the common law "prior litigation" exception. Under the prior litigation exception, a party may recover attorney fees incurred in prior litigation with a third party where the present defendant by wrongful conduct caused the present plaintiff to prosecute or defend the prior action. *Grace v Grace*, 253 Mich App 357, 371; 655 NW2d 595 (2002). In this case, Lamar seeks to recover attorney fees incurred to litigate this action and the prior action with International, and therefore this case does not fall within the traditional description of the prior litigation exception.

Lamar contends, however, that the recovery of attorney fees "has been allowed in limited situations where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct." *Brooks*, 191 Mich App at 575. A review of the decisions relied upon to support this statement in *Brooks*, however, indicates that those cases involved fees incurred in previous disputes caused by the defendant's fraudulent conduct. See *Oppenhuizen v Wennersten*, 2 Mich App 288, 299; 139 NW2d 765 (1966) (the measure of damages for a claim of fraud may include attorney fees or legal costs that the plaintiff incurred in a dispute with a third party that was caused by the defendant's fraud); *Tutton v Olsen & Ebann*, 251 Mich 642, 650; 232 NW 399 (1930) (holding that a person may recover as a form of damages his or her attorney fees incurred in defending himself or herself from an earlier prosecution in a claim for malicious prosecution brought against the defendant who caused the earlier prosecution); *Bates v Kitchel*, 166 Mich 695, 701-702; 132 NW 459 (1911) (stating that the expenses the plaintiff incurred in procuring his discharge from imprisonment were recoverable in an action for false imprisonment because the expenses were a direct and necessary result of the unlawful imprisonment). The key consideration in each of the cases cited in *Brooks* was that the plaintiff established that the defendant's actions caused the plaintiff to incur legal expenses in an earlier action involving a third party.

This Court, however, has since relied on *Brooks* for the proposition that a trial court has authority to award attorney fees in an action in which the moving party incurred the fees as a result of another party's fraudulent or unlawful conduct. See *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 286-287; 761 NW2d 761 (2008); see also *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006). Although earlier caselaw limited an award of attorney fees to fees incurred in prior litigation, the Court in *Ypsilanti* did not limit the exception in that same way:

> Plaintiff was forced to incur substantial costs and attorney fees to prosecute this matter, which originally arose out of defendant's illegal and egregious discharge of raw sewage into a public storm drain. The matter then continued when defendant

flaunted the circuit court's orders requiring him to clean up and remediate the contaminated areas on his property, and when he refused to bring his buildings into compliance with applicable local ordinances. Plaintiff incurred substantial legal expenses as a result of defendant's unlawful conduct. We cannot conclude that the circuit court's award of attorney fees for plaintiff fell outside the range of reasonable and principled outcomes. [*Ypsilanti Charter Twp*, 281 Mich App at 286-287 (citations omitted).]

Under the rule as articulated in *Ypsilanti*, Lamar could seek attorney fees associated with prosecuting its claim against International on the basis that International engaged in fraudulent or unlawful conduct that forced Lamar to prosecute its claim. See *id*. at 286-287. Accordingly, the trial court necessarily abused its discretion when it denied Lamar's motion for attorney fees on the ground that there was no exception to the American Rule premised on fraud or unlawful conduct. See *Ronnisch Constr Group*, 499 Mich at 552. Consequently, we vacate the trial court's order denying Lamar's motion for attorney fees and remand for reconsideration of that motion. The trial court is directed on remand to reconsider Lamar's request for attorney fees under the rule established in *Ypsilanti* and as stated in *Spectrum Health* and cases cited therein. See *Brooks*, 191 Mich App at 575.

## E. COSTS

International contends that the trial court abused its discretion by awarding costs to Lamar in excess of costs approved by the trial court's clerk. We review a trial court's decision to award costs for an abuse of discretion, *Pirgu v United Servs Auto Ass'n,* 499 Mich 269, 274; 884 NW2d 257 (2016), and review de novo the application of the relevant statutes and court rules, *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019). Whether a particular expense is taxable as a cost is a question of law that we review de novo. *VanElslander v Thomas Sebold & Assocs, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012).

MCR 2.625 permits the prevailing party to recover the costs incurred during litigation. MCR 2.625(A)(1) provides that costs "will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." However, because the power to tax costs is purely statutory, the prevailing party cannot recover costs absent statutory authority. *Estate of Carlsen v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 701; 980 NW2d 785 (2021). What is a "cost" within the meaning of MCR 2.625(A) is ascertained by reference to the statutory provisions identifying what items are taxable as costs. *Id*. at 702.

The Revised Judicature Act, MCL 600.101 *et seq*., provides that the following items generally may be taxed as costs:

(1) Any of the fees of officers, witnesses, or other persons mentioned in this chapter or in [MCL 600.2501 *et seq.*], unless a contrary intention is stated.

(2) Matters specially made taxable elsewhere in the statutes or rules.

(3) The legal fees for any newspaper publication required by law.

-15-

(4) The reasonable expense of printing any required brief and appendix in the supreme court, including any brief on motion for leave to appeal.

(5) The reasonable costs of any bond required by law, including any stay of proceeding or appeal bond.

(6) Any attorney fees authorized by statute or by court rule. [MCL 600.2405.]

MCR 2.625(F) provides the procedure for taxing costs, directing the party entitled to costs to submit a bill of costs and supporting materials, and directing the trial court clerk to approve the appropriate costs. The action of the clerk is then reviewable by the trial court upon motion by an affected party. MCR 2.625(F)(4). In this case, after prevailing in the second jury trial Lamar submitted a bill of costs to the trial court clerk requesting $40,237.86 in taxable costs, and specified the requested amounts as follows:

| | |
|---|---|
| Filing fee, MCL 600.2529(2): | $187.98 |
| Motion fees, MCL 600.2529(2): | $834.37 |
| Service of process fee, MCL 600.2555, MCL 600.2559(1)(a): | $50.00 |
| Transcript fees, MCL 600.2543(2): | $2,021.62 |
| Depa's travel costs, MCL 600.2552(1): | $960.50 |
| Expert witness fees, MCL 600.2163: | $25,045.39 |
| Appeal Bond, MCL 600.2505(5): | $11,138.00 |

International objected to the bill of costs, and the trial court clerk approved costs in the amount of $660.35. Lamar moved for review of the clerk's action. The trial court thereafter directed the trial court clerk to issue an additional taxation of costs to Lamar in the amount of $39,165.51, which included the amounts Lamar sought for transcript fees, Depa's travel, expert witness fees, and the appeal bond fee. International challenges on appeal the trial court's taxation of those costs.

## 1. TRANSCRIPTS

International contends that the trial court abused its discretion by permitting Lamar to tax the cost of transcripts from the first trial because those transcripts were prepared in anticipation of appeal to this Court and not for a purpose authorized by MCL 600.2543(2). That statutory section provides:

Only if the transcript is desired for the purpose of moving for a new trial or preparing a record for appeal shall the amount of reporters' or recorders' fees paid for the transcript be recovered as a part of the taxable costs of the prevailing party in the motion, in the court of appeals or the supreme court. [MCL 600.2543(2).]

MCL 600.2543(2) does not authorize the trial court to tax the cost of transcripts prepared for an appeal, which is a taxable cost on appeal. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 74; 903 NW2d 197 (2017). However, if a transcript was prepared for the purpose of moving for a new trial, it may be "recovered as a part of the taxable costs of the prevailing party in the motion . . . ." MCL 600.2543(2). In this case, the transcript from the first trial was not prepared for the purpose of Lamar moving for a new trial. Although Lamar indicates that it used the transcript to seek a new trial after learning of International's fraud, the record indicates that Lamar initially obtained the transcript for the purpose of preparing for a motion for judgment notwithstanding the verdict after the first trial, on which it did not prevail, and also for its appeal in this Court. Accordingly, the trial court erred when it allowed Lamar to tax the cost of preparing the transcript from the first trial. We therefore vacate the trial court's taxation of costs to the extent that it included this expense.

## 2. TRAVEL EXPENSES

International contends that the trial court erred in taxing costs for Depa's travel expenses. A witness may be compensated for his or her travel expenses "in coming to the place of attendance and returning from the place of attendance" for trial, but only as provided under MCL 600.2552(5). See MCL 600.2552(1). Under MCL 600.2552(5), the witness may be reimbursed a "per-mile rate" equal to the rate set by the department of management and budget for state employees. See MCL 600.2552(5). Mileage must be "estimated from the residence of the witness, if his or her residence is within this state, or from the boundary line of this state that the witness passed in coming into this state, if his or her residence is out of this state." MCL 600.2552(1).

In this case, it is undisputed that Depa flew to Michigan to attend the trial. MCL 600.2552 does not limit reimbursement to any particular mode of travel. The trial court, however, allowed Lamar to tax the full cost of Depa's airfare ($960.50) without applying the estimated miles to the rate of reimbursement provided under MCL 600.2552(5). Accordingly, we vacate the trial court's order to the extent that it included this expense and remand to the trial court for amendment of the order to reflect the cost of Depa's travel expense calculated under MCL 600.2552.

## 3. EXPERT WITNESS FEES

International contends that the trial court erred by permitting Lamar to tax the fees of its expert witness, John Stott Matthews, who testified regarding his inspection of International's computers. We review for an abuse of discretion the trial court's determination of the amount of expert witness fees taxed as costs. *Estate of Carlsen*, 338 Mich App at 701.

MCL 600.2164 governs the award of costs for expert witness fees, and states in relevant part:

> (1) No expert witness shall be paid, or receive as compensation in any given case for his services as such, a sum in excess of the ordinary witness fees provided by law, unless the court before whom such witness is to appear, or has appeared, awards a larger sum, which sum may be taxed as part of the taxable costs in the case. . . .

* * *

(3) The provisions of this section shall not be applicable to witnesses testifying to the established facts, or deduction of science, nor to any other specific facts, but only to witnesses testifying to matters of opinion.

International argues that the trial court erred when it allowed Lamar to tax Matthews' expert witness fees because Matthews testified to facts and not as an expert witness. Under MCL 600.2164(3), an expert must testify as to "matters of opinion" and not to "established facts" to be entitled to compensation in excess of that for an ordinary witness. See MCL 600.2164(3); see also *Guerrero v Smith*, 280 Mich App 647, 672; 761 NW2d 723 (2008). Contrary to International's argument on appeal, Matthews testimony encompassed more than facts. Matthews testified about his investigation of the computer devices at issue and informed the court about the observations and reports that he made in his investigation. The trial court qualified him as an expert in computer forensics, and he offered opinion testimony about his observations throughout the hearing. The trial court therefore had authority to grant Lamar's request to tax Matthews' fees as a cost.

International argues, however, that the trial court erred by allowing Lamar to tax Matthews' fees for time during which Matthews charged for advising and educating Lamar's lawyers and for engaging in work other than testifying or preparing to testify. A trial court may only tax those fees related to testifying as an expert witness or preparing to testify as an expert witness; the court may not tax as a cost those fees arising from "conferences with counsel for purposes such as educating counsel about expert appraisals, strategy sessions, and critical assessment of the opposing party's position." See *Detroit v Lufran Co*, 159 Mich App 62, 67; 406 NW2d 235 (1987). Additionally, the trial court may assess the reasonableness of an expert's fees and adjust them accordingly. See *Guerrero*, 280 Mich App at 675-677.

In its motion to tax costs, Lamar submitted documentation that showed that Matthews' charges included time and expenses arguably not compensable as costs, such as hardware that he purchased as part of his investigation and telephone conversations apparently for the purpose of educating counsel. See *Lufran Co*, 159 Mich App at 67. Moreover, the record does not demonstrate that the trial court evaluated the reasonableness of Matthews' fees. See *Guerrero*, 280 Mich App at 675-677. Accordingly, we vacate the trial court's order to the extent that it taxed costs for Matthews' fees and remand to the trial court to permit it to assess the requested fees.

### 4. APPEAL BOND

International also argues that the trial court had no authority to allow Lamar to tax its expenses for an appeal bond because Lamar did not identify a correct basis for taxing that cost in its request to the trial court's clerk. A trial court may tax the "reasonable costs of any bond required by law, including any stay of proceeding or appeal bond." MCL 600.2405(5). The expenses for a letter of credit obtained in lieu of a bond also may be taxable as a cost under this statute. *VanElslander*, 297 Mich App at 222. An appeal bond is a form of security designed to protect an appellee's rights during the pendency of an appeal. See *Federal Nat'l Mortgage Ass'n v Wingate*, 404 Mich 661, 678; 273 NW2d 456 (1979). As such, it is normally incurred in the trial court as a condition precedent to an appeal. See MCR 2.621(H)(1). Because the trial court has the authority to tax costs incurred in its court, see MCL 600.2455, it had the authority to tax the expenses that

Lamar incurred in connection with its letter of credit as a cost under MCL 600.2405(5). See *VanElslander*, 297 Mich App at 222.

International argues that under MCR 7.219(F)(2), only the Court of Appeals has authority to tax the costs of an appeal bond. MCR 7.219(F) provides that a "prevailing party may tax only the reasonable costs incurred in the Court of Appeals," which includes expenses for any "appeal or stay bond." MCR 7.219(F)(2). That is, when an appeal or stay bond is "incurred" in the Court of Appeals, the prevailing party on appeal may tax the costs associated with that bond. The Supreme Court similarly provided that the prevailing party in the Supreme Court could tax the costs associated with his or her appeal bond. See MCR 7.319(A). The court rules are consistent with the general proposition that a party is only entitled to tax the costs incurred in a particular court when that party prevails in that court. The trial court did not err when it allowed Lamar to tax the expenses associated with its letter of credit in lieu of appeal bond that was incurred in that court.

We affirm the trial court's order entering judgment for Simply Storage and Lamar, vacate the trial court's order denying Lamar's request for attorney fees, vacate in part the trial court's order granting costs, and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing parties in Docket No. 359082, Lamar and Simply Storage may tax the costs associated with that appeal. See MCR 7.219(A). Because none of the parties prevailed in full in Docket No. 359811, no party may tax costs incurred in that appeal. See MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood